ORIGINAL

1   MELISSA W. COOK, ESQ.; SBN: 134791
    KERRY K. FENNELLY, ESQ.; SBN: 232621
2   MELISSA W. COOK & ASSOCIATES
    3444 Camino del Rio North, Suite 106
3   San Diego, California 92108
    Telephone: (619) 280-4302
4   Facsimile: (619) 280-4304

*FILED*

07 NOV 30 PM 12: 24

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: Ψ

5   Attorneys for SAN DIEGO UNITE-HERE
    PENSION FUND

DEPUTY

6

**FILE BY FAX**

7

8             UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10   SAN DIEGO UNITE-HERE PENSION     )    Case No.
11   FUND,                           )    07 CV   2262 WQH   (BLM)
12             Petitioner,       )
13   vs.                         )    NOTICE OF PETITION AND
                                  )    PETITION FOR ORDER
14   CHARLES YIP, an individual,       )    VACATING ARBITRATION
                                  )    AWARD
15             Respondent.      )
                                  )

16

17         Petitioner SAN DIEGO UNITE-HERE PENSION FUND (hereinafter

18 "Petitioner" or "Pension Fund") hereby alleges and requests relief against Respondent

19 CHARLES YIP (hereinafter "Respondent" or "Yip").

20         1.      This Petition requests the Court to vacate an award in an arbitration

21 conducted according to an agreement between the parties.

22         2.      This Petition commences a new action.

23         3.      Petitioner is a joint labor-management trust fund created pursuant to

24 Section 302(c) of the Labor-Management Relations Act, 29 U.S.C. §186(c) and is

25 governed by the Employee Retirement Income Security Act of 1974 (hereinafter referred

26 to as "ERISA"), as amended 29 U.S.C. §1001, *et seq.*

27         4.      Petitioner's principle place of business is in San Diego, California.

28         5.      Petitioner is informed and believes and thereon alleges, Respondent

1  is an individual, who, at all relevant times was, a resident and citizen of the state of

2  California.

3          6.      This Court's jurisdiction is invoked pursuant to ERISA section

4  502(e)(1), as amended (29 U.S.C. §1332(e)) as this action involves a claim by

5  Respondent for pension benefits under a pension plan regulated and governed under

6  ERISA.

7          7.      The Arbitration Award was made in this district and the events giving

8  rise to Respondent's claim occurred in this district, thus venue is proper in this district

9  under 9 U.S.C. §9 and ERISA section 502(e)(2) (29 U.S.C. §1332(e)(2)).

10          8.      On or about March 14, 2007, Petitioner and Respondent submitted

11  a joint Submission for Arbitration to the American Arbitration Association. A true and

12  correct copy of the Submission for Arbitration is attached and incorporated herein as

13  Exhibit A.

14          9.      Paragraph two of the Submission for Arbitration attached as Exhibit

15  A hereto, provides that Respondent, under the appeals procedure set forth in Section

16  10.02 of the San Diego UNITE-HERE Pension Plan (hereinafter "Pension Plan"),

17  appealed to arbitration the decision of the Board of Trustees of the San Diego UNITE-

18  HERE Pension Fund (hereinafter "Trustees") to sustain the previous administrative

19  decision denying Respondent's application for service pension benefits. A true and

20  correct copy of Section 10.02 of the Pension Plan is attached and incorporated herein as

21  Exhibit B.

22          10.     Paragraph three of the Submission for Arbitration attached as Exhibit

23  A hereto, further provides the questions for the arbitrator shall be (1) whether the

24  Trustees were in error upon an issue of law; (2) whether they acted arbitrary or

25  capriciously in the exercise of their discretion; and (3) whether their findings of fact were

26  supported by substantial evidence.

27          11.     On August 8, 2007, the arbitration hearing was conducted in San

28  Diego, California before Arbitrator Phillip Tamoush, who was appointed through the

-2-

1  American Arbitration Association. . Both parties were represented by counsel at the
2  arbitration hearing.

3  12.  On August 10, 2007, Arbitrator Tamoush sent the parties a letter
4  listing a "couple of decisions" by him, in which he stated that the "'standards of proof'
5  are as indicated in the signed submission statements" and he requested the parties submit
6  additional post-hearing briefs on noted issues. A true and correct copy of the Arbitrator
7  Tamoush's August 10, 2007 letter is attached and incorporated herein as Exhibit C.

8  13.  After submission of post-hearing briefs by all parties, the Arbitration
9  Award was made on August 29, 2007 and served on the parties on September 6, 2007.
10  A true and correct copy of the Arbitration Award is attached and incorporated herein as
11  Exhibit D.

12  14.  The arbitration award requires Petitioner to grant Respondent service
13  pension benefits without a severance of employment by Respondent in violation of the
14  Pension Plan and the Internal Revenue Code and applicable regulations.

15  15.  Petitioner requests that the Court vacate the Award on the grounds
16  that the Arbitration Award was made "in manifest disregard of the law." *First Options*
17  *of Chicago, Inc. v. Kaplan*, (1995) 514 U.S. 938, 942; see also *Wilko v. Swan*, (1953) 346
18  U.S.  427,  436-437  (overruled  on  other  grounds,  *Rodriguez  De  Quijas  v.*
19  *Shearson/American Expage, Inc.*, (1989) 490 U.S. 477); *Northrop Corp. v. Triad*
20  *International Marketing S.A.*, 811 F.2d 1265, 1269 (9th Cir. 1987).

21  16.  "Manifest disregard" exists when the "governing law alleged to have
22  been ignored by the arbitrators [was] well defined, explicit, and clearly applicable."
23  *Bear v. Buehler*, (C.D. Cal. 2000) 432 F. Supp. 2d 1024, 1026 (internal citations
24  omitted).  "The error made by the arbitrators must have been obvious and capable of
25  being perceived readily and instantly. . ." *Id.* (internal citations omitted). "Moreover,
26  the term 'disregard' implies that the arbitrator appreciated the existence of the clearly
27  governing principle but decided to ignore it." *Id.* (internal citations omitted).

28  17.  "Manifest disregard" has further been found to exist where an award

-3-

1 directs the parties to violate applicable law. *George Watts & Son, Inc. v. Tiffany & Co.*,
2 (7th Cir. 2001) 248 F.3d 577, 580-581.

3      18.    In this matter, Arbitrator Phillip Tamoush manifestly disregarded the
4 clearly governing law of section 401(a) of the Internal Revenue Code of 1954 and directs
5 the Pension Fund to violate section 401(a) of the Internal Revenue Code as well as the
6 applicable Treasury Regulations and Revenue Rulings by requiring the Pension Fund to
7 pay Yip service pension benefits despite the fact Yip has not severed his active
8 employment.

9      19.    As stated on page 9 lines 12 through 14 of the Pension Fund's
10 Arbitration Brief, the Pension Fund at issue in this matter is a qualified plan under
11 Internal Revenue Code Section 401(a). A true and correct copy of the Pension Fund's
12 Arbitration Brief is attached and incorporated herein as Exhibit E.

13      20.    As the Pension Fund explained on page 9 lines 15 through 27 of its
14 Arbitration Brief, as well as at the arbitration hearing, because it is a qualified pension
15 plan it may not distribute benefits to participants before they reach normal retirement age
16 while they still are actively employed.

17      21.    Additionally, the Pension Fund cited to and attached applicable
18 Revenue Rulings to its Arbitration Brief, which hold that a pension plan which permits
19 the participants, prior to any severance of employment (e.g. retirement, disability, or
20 death) to withdraw all or a part of the funds accumulated on their behalf that consists of
21 employer contributions or increments thereon is inconsistent with the accepted concept
22 of a pension plan under the requirements of section 401(a) of the Code. *See* Rev. Rul.
23 56-693, 1956-2 CB 282 *as modified by* Rev. Rul. 60-323, 1960-2 C.B. 148; Rev. Rule
24 74-417, I.R.B. 1974-35, 6, attached and incorporated herein as Exhibit 4 of Exhibit E.

25      22.    Despite the Pension Fund's clear explanation of the legal principles
26 and applicability of Section 401(a) of the Internal Revenue Code, Arbitrator Tamoush
27 manifestly disregarded the Internal Revenue Code and awarded Yip service pension
28 benefits despite the fact Yip has not reached normal retirement age or severed his

-4-

1   employment with the Hyatt Regency Islandia Hotel.

2         23.    Arbitrator Tamoush completely ignored the well-defined, explicit and

3   clearly applicable governing law of Section 401(a) to this matter which was called to his

4   attention numerous times.

5         24.    It is evident that Arbitrator Tamoush manifestly disregarded the law

6   as he does not mention Section 401(a) or the relevant Revenue Rulings once in his

7   Arbitration Award despite the Pension Fund's discussion of the applicable and governing

8   legal principles in both its Arbitration Brief and at the arbitration hearing.

9         25.    Unless the Arbitration Award is vacated, this matter will result in

10  significant injustice, as the Pension Fund will be forced to violate Section 401(a) and

11  thus, risk losing its status as a qualified pension fund, which is the purpose of its

12  existence.

13        26.    Petitioner further requests that pursuant to 9 U.S.C. §10(a)(4) the

14  Court vacate the Arbitration Award on the grounds that Arbitrator Tamoush exceeded

15  his powers as outlined in the Submission For Arbitration submitted by and agreed to by

16  the parties.

17        27.    Although courts may not substitute their own interpretation for that

18  of an arbitrator's, courts do determine issues of whether an arbitrator acted within the

19  scope of his authority, and whether the award draws its essence from the agreement or

20  is merely an example of the arbitrator's own brand of justice. *Local 1199, Hosp. &*

21  *Health Care Emples. Union v. Brooks Drug Co.*, (2d Cir. 1992) 956 F.2d 22, 25. "The

22  scope of authority of arbitrators generally depends on the intention of the parties to an

23  arbitration, and is determined by the agreement or submission." *Id.* (internal citations

24  omitted).

25        28.    In this matter, despite his acknowledgment in his August 10, 2007

26  letter that the "standards of proof" in this matter are as indicated in the Submission For

27  Arbitration, Arbitrator Tamoush exceeded the bounds of his authority in order to reach

28  a desired outcome and administer his own brand of justice.

-5-

29. As stated in the Submission of Arbitration attached hereto as Exhibit A, the three legal issues in which Arbitrator Tamoush was to limit his review were: (1) whether the Trustees were in error upon an issue of law; (2) whether they acted arbitrary or capriciously in the exercise of their discretion; and (3) whether their findings of fact were supported by substantial evidence.

30. A reading of the Arbitration Award illustrates Arbitrator Tamoush did not review this matter within the scope of the three legal issues presented to him but exceeded the limits of an "arbitrary and capricious" standard of review and reviewed this the mater *de novo*.

31. It is well established that the trustees of employee benefit funds have broad discretion in administering the affairs of the trust funds. See *Toensing v. Brown*, (N.D. Cal. 1974) 374 F.Supp. 191, 198, aff'd, 528 F.2d 69 (9th Cir. 1975); *Giler v. Board of Trustees*, (9th Cir. 1975) 509 F.2d 848, 849; *Gomez v. Lewis*, (3rd Cir. 1969) 414 F.2d 1312, 1313. It was Congress' intent that trustees "possess broad managerial and administrative discretion in the operation of their funds," especially in the area of "claims resolution." *Taylor v. Bakery & Confectionary Union Industrial International Welfare Fund*, (E.D.N.C. 1978) 455 F.Supp. 816, 819).

32. When the standard of review is arbitrary and capricious, the reviewing tribunal is limited in its review to considering only the evidence contained in the administrative record. *Jett v. Blue Cross & Blue Shield of Alabama*, (11th Cir. 1989) 890 F.2d 1137, 1139; See also, *Abatie v. Alta Health & Life Ins. Co.*, (9th Cir. 2006) 458 F.3d 955, 970 (en banc).

33. "The touchstone of 'arbitrary and capricious' conduct is unreasonableness." *Clark v. Washington Teamster Welfare Trust*, (9th Cir. 1993) 8 F.3d 1429, 1432. "'[The] inquiry is not into whose interpretation of plan documents is most persuasive, but whether the plan administrator's interpretation is unreasonable.'" *Id.* (citing *MacDonald v. Pan American World Airways, Inc.*, (9th Cir. 1988) 859 F.2d 742, 744).

-6-

Notice and Petition for Order Vacating Arbitration Award

34.    It is evident throughout the Arbitration Award issued by Arbitrator Tamoush that he reviewed this matter under a *de novo* standard by deciding this matter on alleged evidence that was outside the administrative record regarding other participants and substituting his own interpretation of the plan document for that of the Trustees.

35.    In paragraph one of the Decision section of the Arbitration Award, attached hereto as Exhibit D, Arbitrator Tamoush finds the Trustees were in error on an issue of law, yet he cites no law (including Section 401(a)) and improperly discusses his own interpretation of the Pension Plan.

36.    In paragraph two of the Decision section of the Arbitration Award, Arbitrator Tamoush finds the Trustees acted arbitrarily and capriciously, yet he cites no findings of the Trustees that were unreasonable but rather again discusses evidence outside the administrative record and his own interpretation of the plan document.

37.    Lastly, in paragraph three of the Decision section of the Arbitration Award, Arbitrator Tamoush states that the Trustees' findings of fact were not supported by substantial evidence, yet he fails to state what those findings of fact were or the evidence that was before the Trustees that they did consider.

38.    Further evidence that Arbitrator Tamoush exceeded the bounds of his review by considering evidence outside the administrative record and substituting his own interpretation of the plan document to reach the result is found in his statements in the Arbitration Award on page 2 under "Further Rationale."

39.    In paragraph one under Further Rationale of the Arbitration Award, Arbitrator Tamoush states the plan document has an "latent ambiguity" but instead of discussing the reasonableness of the Trustees' interpretation of that ambiguity he discusses the evidence and rationale he finds persuasive in interpreting the plan document to find it does allow Yip to receive service pension benefits without severing his employment.

///

Notice and Petition for Order Vacating Arbitration Award

WHEREFORE, Petitioner prays for relief against Respondent as follows:

1.    An order vacating the arbitration award;

2.    An order determining that Respondent is not entitled to service pension benefits without first severing his active employment;

3.    For such other and further relief as the Court deems just and proper.

DATED: November 30 , 2007        BOARD OF TRUSTEES OF THE
                                 SAN DIEGO UNITE-HERE PENSION FUND


By: _Kerry Fennelly_____
    Melissa W. Cook, Esq.
    Kerry Kessler Fennelly, Esq.
    MELISSA W. COOK & ASSOCIATES
    3444 Camino del Rio North, Suite 106
    San Diego, California 92108
    Attorney for Respondent

-8-

Notice and Petition for Order Vacating Arbitration Award

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| EXHIBIT A | Submission for Arbitration | 10 |
| EXHIBIT B | Section 10.02 of the Pension Plan | 12 |
| EXHIBIT C | Arbitrator Tamoush's August 10, 2007 letter | 14 |
| EXHIBIT D | Arbitration Award | 17 |
| EXHIBIT E | Pension Fund's Arbitration Brief | 20 |

Notice and Petition for Order Vacating Arbitration Award

1
2
3
4
5
6
7

8                    AMERICAN ARBITRATION ASSOCIATION

9
10

11  IN THE MATTER OF:                    )        CASE NO.
                                         )
12  CHARLES YIP,                         )
                                         )        SUBMISSION FOR
13                    Petitioner,        )        ARBITRATION
                                         )
14  vs.                                  )
                                         )
15  BOARD OF TRUSTEES OF THE             )
    SAN DIEGO UNITE-HERE                 )
16  PENSION FUND,                        )
                                         )
17                    Respondent.        )
    _____  )

18

19      TO:   **AMERICAN ARBITRATION ASSOCIATION** 6795 North Palm

20  Avenue, Second Floor, Fresno, California 93704.

21          The undersigned parties hereby request arbitration under the Labor

22  Arbitration Rules of the American Arbitration Association.

23          On January 5, 2007, the Board of Trustees of the San Diego UNITE-HERE

24  Pension Fund sustained the previous administrative decision denying Mr. Yip's

25  application for service pension benefits. Mr. Yip is appealing the decision to arbitration

26  under the appeals procedure set forth in Section 10.02 of the San Diego UNITE-HERE

27  Pension Plan.

28          The questions presented for the arbitrator shall be (1) whether the Trustees

MWC/ldt/Yip.Sub Arb.wpd

**EXHIBIT** A

10

1  were in error upon an issue of law, (2) whether they acted arbitrarily or capriciously in

2  the exercise of their discretion, and (3) whether their findings of fact were supported by

3  substantial evidence.

4

5  DATED:

6

7  _____
   CHARLES YIP, Petitioner

8

9  DATED: 3/1/07

10                                          BOARD OF TRUSTEES OF THE
                                            SAN DIEGO UNITE-HERE PENSION FUND

11  By: _____
        MELISSA W. COOK, ESQ.

12      MELISSA W. COOK & ASSOCIATES
        3444 Camino del Rio North, Suite 106

13      San Diego, California 92108
        Attorney for Respondent

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

**EXHIBIT A**

11

(1) <u>Application for Review</u>. The claimant, or the claimant's duly authorized representative, may request a review of the claim denial by filing a written application for such review within sixty (60) days after receipt of the written notification of the denial. The Trustees may consider a late application if they conclude the delay in filing was for reasonable cause.

(2) <u>Review Procedure</u>. When any such application is received, the claim and its denial shall receive a full and fair review by the Trustees or any subcommittee to which it delegates this function. As part of the review procedure, the claimant, or the claimant's duly authorized representative, may review pertinent documents and submit issues and comments in writing, but shall have no right to appear personally before the reviewing group unless that group concludes that such an appearance would be of value in enabling it to perform its obligations hereunder.

(d)   <u>Notice of Decision on Review.</u>

(1) <u>Contents of Notice</u>. The notice of decision on the appeal of a claim denial shall be furnished to the claimant in writing and shall include specific reasons for the decision, written in a manner calculated to be understood by the claimant, as well as specific references to the pertinent Plan provisions on which the decision is based. The decision shall be furnished to the claimant as promptly as possible after a decision is reached within the time period described below, and if not so furnished, the claimant may consider it to have been denied.

(2) <u>Time of Notice</u>. If the decision on review is to be made by the Trustees or a subcommittee of Trustees which is holding regularly scheduled meetings at least quarterly, the decisions shall be made no later than the date of the first such meeting which occurs at least thirty (30) days following receipt of the request for review. However, if special circumstances require an extension of time for processing, the decision shall be rendered not later than the third meeting following receipt of the request. In all other cases, the decision shall be made promptly and ordinarily not later than sixty (60) days after receipt of the request for review, unless special circumstances require an extension of time for processing, in which case the decision shall be rendered as soon as possible but not later than one hundred twenty (120) days after receipt of the request for review.

Whenever special circumstances require an extension of time for processing, written notice of the extension shall be furnished to the claimant before the extension period begins.

<u>Section 10.02 Arbitration</u>   The decision of the Trustees, if the Employee, Retiree, Spouse, Alternate Payee or Beneficiary elects such further consideration, shall be final and binding upon all parties. However, if the Employee, Retiree, Spouse, Alternate Payee or Beneficiary is dissatisfied with the written decision of the Trustees, he or she shall have the right to appeal the matter to arbitration in accordance with the labor arbitration rules of the American Arbitration Association, provided that he or she submit a request for arbitration to the Trustees, in writing, within sixty (60) days of receipt of the written decision. If an appeal to arbitration is requested, the Trustees shall submit to the arbitrator a copy of the record upon which the Trustees' decision was made. The Trustees shall bear the costs of the arbitration. Each party will be responsible for their own attorney's fees incurred in such arbitration. The questions for the arbitrator shall be (1) whether the Trustees were in error upon

**EXHIBIT B**

**12**

an issue of law; (2) whether the Trustees acted arbitrarily or capriciously in the exercise of their discretion; and (3) whether the Trustees' findings of fact were supported by substantial evidence. The decision of the arbitrator shall be final and binding upon all parties whose interests are affected thereby. However, the claimant shall have the right to bring an action in court against the Fund after having first exhausted all administrative remedies under the Plan.

-67-

**EXHIBIT B**

**13**

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Western Case Management Center*
John M. Bishop
Vice President
Jeffrey Garcia
Assistant Vice President

August 10, 2007

6795 North Palm Ave, 2nd Floor, Fresno, CA 93704
telephone: 877-528-0880 facsimile: 559-490-1919
internet: http://www.adr.org/

VIA FACSIMILE ONLY

Stefan M. Cohn
Brictson and Cohn
2214 Fifth Ave.
San Diego, CA 92101

Melissa W. Cook, Esq.
Melissa W. Cook & Associates
3444 Camino Del Rio North, Suite 106
San Diego, CA 92108

Re: 73 620 00140 07 LYMC
    Charles Yip
    and
    Board of Trustees of the San Diego UNITE-HERE
    Pension Fund

Grievances:    Charles Yip - Denial of Service Pension Plan

Dear Parties:

This will acknowledge receipt of a letter dated August 10, 2007, from Arbitrator Tamoush, a copy of which is enclosed for your file.

Please responded accordingly.

The arbitrator has requested that the Association collect an additional $1,200.00 as a deposit for anticipated arbitrator compensation. Should you need a copy immediately to facilitate payment, please let me know.

Payment is due by August 17, 2007. Please remember to detach and include the top portion of your invoice when remitting payment.

Thank you for your continued cooperation.

Very truly yours,

/s/
Denise Crow for
Lynn M. Cortinas
Case Manager
559-490-1854
cortinasl@adr.org

Enclosure

**EXHIBIT C**

**14**

# PHILIP TAMOUSH

## Arbitrator-Mediator-Factfinder

Post Office Box 1128
Torrance, California 90505-0128
(800) 747-9245 (Voice) (800) 903-4266 (Fax)
(www.finaldisputeresolution.com philip@tamoush.com)
(Principal Office & Mailing Address)

San Francisco/East Bay
385 Grand Avenue, Suite 201
Oakland, California 94610-4816

August 10, 2007

VIA AMERICAN ARBITRATION ASSOCIATION

Tim Bricson, Esq.
Bricston and Cohn
2214 Fifth Ave.
San Diego, CA 92101

Melissa W. Cook, Esq.
Melissa W. Cook & Associates
3444 Camino Del Rio North, Suite 106
San Diego, CA 92108

RE:    ARBITRATION: Post-Hearing Details: YIP v. UNITE-HERE Pension Fund (AAA Case No. 73 620 00140 07 LYMC) and QUINTERO v. UNITE-HERE Pension Fund (AAA Case No. 73 620 00137 07 LYMC)

Dear Counsel:

Just a couple of decisions by me and requests so we can finalize and close the hearing in the above matters:

1. The 'standards of proof' are as indicated in the signed submission statements of the Appellants YIP and QUINTERO, for the purposes of my resolving the substantive issue of whether the Appellants should have been granted Service Pensions by the Board of Trustees without having to sever employment.
2. Please do submit written post-hearing briefs regarding any and all relevant issues presented in the hearings, using the 'standards of proof' from the submission agreements signed by the Appellants.
3. Please comment in any post-hearing brief on the meaning/implications of section 3.12 (b) of the Pension Plan specifically with regard to what 'recommencing employment' might mean, in anything, in the context of our hearing.
4. Please comment on the implications/meaning of there being at least some 22 employees who retired while continuing to work. Again, comment to the extent you

**EXHIBIT C**

**15**

believe this is relevant to my deliberations. Mr. Brictson is ordered now to provide Ms. Cook with the names of at least those persons.

Of course, you are not required by me to submit a post-hearing brief if you choose not to or to further answer any of the questions posed above. However, in the interest of an expedited resolution, please provide me directly at the address above your briefs postmarked no later than August 17. Send an original and a copy and I will trade them when I receive both. I go on vacation August 31, so I do want to complete this process before then.

Thanks so much for your help in resolving these questions.

Sincerely,

Philip Tamoush

Cc: American Arbitration Association

**EXHIBIT C**

**16**

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

Western Case Management Center
John M. Bishop
Vice President
Jeffrey Garcia
Assistant Vice President

September 6, 2007

6795 North Palm Ave, 2nd Floor, Fresno, CA 93704
telephone: 877-528-0880 facsimile: 559-490-1919;
internet: http://www.adr.org/

## VIA ELECTRONIC MAIL and REGULAR MAIL

Stefan M. Cohn
Brictson and Cohn
2214 Fifth Ave.
San Diego, CA 92101

Melissa W. Cook, Esq.
Melissa W. Cook & Associates
3444 Camino Del Rio North, Suite 106
San Diego, CA 92108

Re: 73 620 00140 07 LYMC
    Charles Yip
    and
    Board of Trustees of the San Diego UNITE-HERE
    Pension Fund

Grievances:    Charles Yip - Denial of Service Pension Plan

Dear Parties:

By direction of the Arbitrator we herewith transmit to you the duly executed Award in the above matter. This serves as a reminder that there is to be no direct communication with the Arbitrator. All communication shall be directed to the Association.

Please note that the case file will be destroyed fifteen (15) months after the date of this letter.

We appreciate your selection of the AAA as your alternative dispute resolution provider in this matter. As always, please do not hesitate to contact me if you have any questions.

Sincerely,
/s/
Lynn M. Cortinas - Case Manager
Direct: 559-490-1854 Fax: 559-490-1837
E-mail: cortinasl@adr.org

*Sandra L. Marshall- Supervisor: Direct: 559-490-1921/E-mail: marshalls@adr.org*

Enclosure(s)

cc:    Philip Tamoush – via electronic mail only

## EXHIBIT D
17

# AMERICAN ARBITRATION ASSOCIATION
## Arbitration Tribunal

In the Matter of the Arbitration between

Re: 73 620 00140 07 LYMC
   Claimant, CHARLES YIP
   VS
   Respondent, Board of Trustees of the San Diego UNITE-HERE Pension Fund

## AWARD OF ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the Pension Fund Rules providing for arbitration of disputes between the above-named parties and dated October 13, 2003, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, do hereby, AWARD, as follows:

### ISSUES

1. whether the Trustees were in error upon an issue of law.
2. whether they acted arbitrarily or capriciously in the exercise of their discretion.
3. whether their findings were supported by substantial evidence.

### BACKGROUND

The parties to this dispute and arbitration matter are CHARLES YIP, Appellant (Claimant) and the Board of Trustees of the San Diego UNITE-HERE Pension Fund (Respondent). An administrative hearing was held before the Board of Trustees regarding the Claimant's application for a Service Pension. While treated as an appeal of the denial of the Fund's administrators, the matter was not processed and heard as a *de novo* consideration. As provided in the Fund Plan, Claimant exercised his right to appeal the decision of the Trustees. The representatives of the parties appeared before the undersigned on August 8, 2007. Both parties were represented by Counsel.

### EXHIBITS

The parties presented documents relative their contentions, including the denial decision of the Fund administrators, the agenda note of the Trustees' denial of the pension, the transcript of the Trustees' hearing, new and old pension application forms, the Plan Rules, and other relevant documents. Pre- and Post-Hearing Briefs were filed by Counsel for both parties.

### DECISION

1. The Trustees were in error upon an issue of law (considering the Rules as the 'law' in this case) in that they failed to consider the question of severance of employment as presented by the Claimant, instituted a 'new' written requirement of proof of severance of employment by pension applicants, and failed to consider the apparent ambiguities in their Rules on this issue.

1

**EXHIBIT D**

**18**

2. The Trustees acted arbitrarily and capriciously as indicated above and in refusing to consider the evidence, finally adduced more specifically at the arbitration hearing, that numerous employees who had been granted Service Pensions retiree's had continued to work in the past without severing their employment. Instead, the Plan initiated a new requirement that pension applicants had to show proof of employment severance before their pension application would be considered on a substantive basis.

3. The Trustee's findings of fact were not supported by substantial evidence in that they failed to investigate the proffered evidence that other employees had not been required to sever employment prior to having their pensions granted.

4. ORDER: The Claimant's request for his Service Pension Benefit is hereby granted without a severance of employment.

### FURTHER RATIONALE

1. Pension Plan Rules have a *latent ambiguity* in that they provide apparently for continued employment after receipt of Service Pension, but also provides for 'recommencing' of employment.

2. Arbitrator accepts showing that at least 22 employees in the two Hotels employing Appellant YIP (and QUINTERO who is an Appellant in a 'companion' case, AAA Case No. 73 620 00137 07 LYMC, being heard simultaneously with the instant case).

3. Denial of pensions unless employment is severed denies retirees seniority and other benefits which they would continue to earn if they did not have to sever employment and for which other employees have benefited.

4. The Arbitrator adopts in while or in part the rationale and argument of Claimant's Counsel as his findings of fact and conclusions of law.

5. The Arbitrator agrees with the sentiment expressed in the *Restatement (Second) of Contracts* which states in relevant part: "...it is sometimes said that extrinsic evidence (Arbitrator's Note: the 22 employees who have received pension benefits without severing employment) cannot change the plain meaning of the writing, but meaning can almost never be plain except in a context..." (found in *How Arbitration Works (Elkouris), BNA, Sixth Edition* page 437 ff., including footnotes))

The administrative fees and expenses of the American Arbitration Association totaling $500.00 shall be borne as incurred.

The fees and expenses of the arbitrator totaling $1500.00 shall be borne as incurred.

The other common expenses relating to this proceeding, totaling $16.55, shall be borne as incurred.

This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby, denied.

This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

8-28-07
_____
**Date**

_Philip Tamoush_ (signature)
_____
**Philip Tamoush**

2

**EXHIBIT D**

19

1 | MELISSA W. COOK, ESQ.; SBN 134791
KERRY KESSLER FENNELLY, ESQ.; SBN 232621
2 | MELISSA W. COOK & ASSOCIATES, A.P.C.
3444 Camino del Rio North, Suite 106
3 | San Diego, California 92108
Telephone: (619) 280-4302
4 | Facsimile: (619) 280-4304

5 | Attorneys for Respondent Board of
Trustees of the San Diego UNITE-
6 | HERE Pension Fund

7

8 |                    AMERICAN ARBITRATION ASSOCIATION

9 | IN THE MATTER OF:                    )        Case No. 73 620 00140 07 LYMC
                                        )
10 | Charles Yip,                        )
                                        )
11 |                 Petitioner,         )
                                        )        RESPONDENT'S ARBITRATION
12 |          vs.                        )        BRIEF
                                        )
13 | BOARD OF TRUSTEES OF THE            )
    SAN DIEGO UNITE-HERE                 )
14 | PENSION FUND,                       )
                                        )        Date: August 8, 2007
15 |                 Respondent.         )        Time: 9:00 a.m.
                                        )        Arbitrator Phillip Tamoush
16 | _____ )

17 |                          **I. INTRODUCTION**

18 |          On October 25, 2006, the Board of Trustees of the San Diego UNITE-HERE

19 | Pension Fund (hereinafter the "TRUSTEES") held an appeal hearing regarding the

20 | request of Petitioner Charles Yip (hereinafter the "PETITIONER") to receive a Service

21 | Pension Benefit while continuing to work at the Hyatt Regency Islandia Hotel.

22 |          Following the Appeal Hearing, the TRUSTEES determined that the

23 | PETITIONER was not entitled to a Service Pension Benefit because he has not severed

24 | employment with his employer, which is a requirement to receive a Service Pension

25 | Benefit under the provisions of the San Diego UNITE-HERE Pension Plan (hereinafter

26 | the "PLAN"). A true and correct copy of the condensed transcript of the appeal hearing

27 | is attached hereto as Exhibit "1", and incorporated herein by reference. A true and

28 | correct copy of the PLAN as revised and restated January 1, 2005, is attached hereto as

Respondent's Arbitration Brief

**EXHIBIT E**
20

1 Exhibit "A" of Exhibit "1", and incorporated herein by reference. A true and correct
2 copy of the Trustees' Findings is attached hereto as "Exhibit 2," and incorporated herein
3 by reference.

4       PETITIONER now seeks arbitration due to the fact that the TRUSTEES
5 denied his appeal and seeks review of the TRUSTEES' finding that he is not entitled to
6 a Service Pension Benefit under the PLAN.

7

## II. FACTS

9       The San Diego UNITE-HERE Pension Fund (hereinafter the "TRUST
10 FUND") is a joint-labor-management pension trust fund operated pursuant to Section
11 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5) (hereinafter
12 the "LMRA"), and other applicable laws and regulations. The TRUST FUND is
13 administered by a joint Board of Trustees consisting of an equal number of Trustees
14 representing management and labor. Administration of the PLAN by the Trustees is
15 regulated by the Employee Retirement Income Security Act of 1974, as amended, 29
16 U.S.C. § 1001, et seq. (Hereinafter the "ERISA").

17       Pursuant to the applicable collective bargaining agreements between UNITE
18 HERE Local 30 and participating employers, monies are contributed by signatory
19 employers to the TRUST FUND and are used to provide retirement benefits for eligible
20 employees of such signatory employers. The TRUST FUND administers pension
21 benefits under the above-referenced PLAN, which was established effective January 1,
22 1968.

23       PETITIONER has continuously worked under the jurisdiction of the San
24 Diego UNITE-HERE Local 30 Collective Bargaining Agreement at the Hyatt Regency
25 Islandia Hotel from July 15, 1976 through the present. PETITIONER applied for a
26 Service Pension Benefit on July 1, 2006.

27       Based on the above information, the TRUST FUND sent a letter to
28 PETITIONER dated August 22, 2006, informing PETITIONER that his application for

-2-

Respondent's Arbitration Brief

**EXHIBIT E**
**21**

1 a Service Pension Benefit had been denied because of his continuing employment with

2 the Hyatt Regency Islandia Hotel.   The TRUSTEES determined that because

3 PETITIONER did not sever his employment with a contributing employer, he did not

4 meet the definition of a "Retired Employee" under the PLAN, which is defined in

5 Section 1.27 of the Plan as "an Employee who has retired from Employment in the

6 Industry within the meaning of Article III." The letter informed PETITIONER that if he

7 could provide proof of his severance of employment from his employer, his application

8 for a Service Pension Benefit would be reconsidered by the TRUSTEES.

9          PETITIONER subsequently requested an appeal hearing before the

10 TRUSTEES. The hearing was held on October 25, 2006, at which time PETITIONER

11 testified before the TRUSTEES. Based on the Administrative Record and evidence

12 presented at the hearing, the TRUST FUND affirmed the denial of PETITIONER's

13 application for a Service Pension Benefit. The TRUST FUND found that because of

14 PETITIONER's employment at the Hyatt Regency Islandia Hotel he is not eligible to

15 retire and therefore not eligible for a Service Pension Benefit under the terms of the

16 PLAN as he does not meet the definition of a "Retired Employee" under the PLAN.

17

18                    **III. SCOPE OF REVIEW**

19   **A.     The Issues That May Be Considered By The Arbitrator Are Limited By
              The Plan**

20

21      Pursuant to ERISA and Section 10.02 of the PLAN, the issues to be considered

22 at arbitration are limited to the following:

23          (1)    whether the Trustees were in error upon an issue of law;

24          (2)    whether the Trustees acted arbitrarily and capriciously in the exercise

25                 of their discretion; and

26          (3)    whether the Trustees' findings of fact were supported by substantial

27                 evidence.

28      The TRUST FUND will demonstrate that: (1) there was no error in applying

-3-

**EXHIBIT E**

**22**

1  either the controlling law or ERISA; (2) the decision was in conformity with the

2  provisions of the PLAN and the decision was neither arbitrary nor capricious; and (3) the

3  findings were based upon substantial evidence.  Accordingly, the TRUSTEES submit

4  that they have properly denied the claim submitted by the PETITIONER at the appeal

5  level, and no further relief is warranted.

6

7      **B.      Under ERISA, The Trustees Have Broad Discretion To Administer The**

8              **PLAN**

9          It is well established that the trustees of employee benefit funds have broad

10  discretion in administering the affairs of the Trust Funds.  *See Toensing v. Brown*, 374

11  F.Supp. 191, 198 (N.D. Cal. 1974), aff'd, 528 F.2d 69 (9th Cir. 1975); *Giler v. Board of*

12  *Trustees*, 509 F.2d 848, 849 (9th Cir. 1975); *Gomez v. Lewis*, 414 F.2d 1312, 1313 (3rd

13  Cir. 1969).  It was Congress' intent that trustees "possess broad managerial and

14  administrative discretion in the operation of their funds," especially in the area of "claims

15  resolution."  *Taylor v. Bakery & Confectionary Union Industrial International Welfare*

16  *Fund*, 455 F.Supp. 816, 819 (E.D.N.C. 1978).  The Trustees have a fiduciary duty to

17  administer the plan solely for the benefit of its beneficiaries and participants and the

18  standard of care that a trustee must employ is that of a prudent man in a like situation.

19  *See* ERISA § 404, 29 U.S.C. § 1104.

20

21      **C.      Congress Intended That Trustees Have Primary Responsibility for**

22              **Benefit Claims: Thus the Arbitrator's Scope of Review is Minimal and**
              **Limited Solely to the Issues and Evidence Before the Trustees at the**

23              **Prior Appeal Hearing**

24          The broad managerial discretion afforded to trustees in administering trust

25  funds "indicates a Congressional intent that [Trustees] be primarily responsible for

26  establishing and operating the claims procedures. (Citations omitted).  Correspondingly,

27  there is a strong policy in favor of letting trustees decide an employee's benefit

28  eligibility."  *Bakery & Confectionary Union*, 455 F.Supp. at 820.

—4—

Respondent's Arbitration Brief

**EXHIBIT E**
**23**

1      The scope of review in cases involving discretionary benefit determinations

2  by Trustees, therefore, is exceedingly narrow and is not to be a trial *de novo* on the

3  underlying facts or merits. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

4  "The 'abuse of discretion' standard applies when the administrator is given discretionary

5  authority." *Jones v. Laborers Health & Welfare Trust Fund*, 906 F.2d 480, 481 (9th Cir.

6  1990). "In order to constitute an abuse of discretion a trustee's factual findings must be

7  'clearly erroneous.'" *Id.* at 482.

8      On review, the arbitrator may consider only that evidence which was before

9  and known to the Trustees at the time the decision was made. *Wardle v. Central States

10  Pension Fund*, 627 F.2d 820, 824 (7th Cir. 1980). The reviewing tribunal may only

11  consider the record that was before the Trustees in order to determine whether such

12  decision was arbitrary or capricious. *Jett v. Blue Cross & Blue Shield of Alabama*, 890

13  F.2d 1137, 1139 (11th Cir. 1989). Thus, the arbitrator is limited to the factual grounds

14  that were available and known to the Trustees at the time the decision was made. *Id.*

15  The consideration of additional evidence is not permitted and is improper. *Id.*

16      Furthermore, decisions by trustees of a plan covered by ERISA will be

17  overturned only when they are determined to have been 1) arbitrary and capricious; 2)

18  not supported by substantial evidence; or 3) erroneous on a question of law. *Rehmar v.

19  Smith*, 555 F.2d 1362, 1371 (9th Cir. 1976). This standard has been followed by the

20  Ninth Circuit (*see Aitken v. IP & GCU-Employer Retirement Fund*, 604 F.2d 1261, 1264

21  (9th Cir. 1979)) and, in fact, is the standard followed by all circuits which have addressed

22  this question. *See Wolfe v. J.C. Penny Co.*, 710 F.2d 388, 393 n. 8 (7th Cir. 1983).

23      In *Wolfe*, the court defined the scope of the court's review in cases such as

24  the present one as follows:

25      "In reviewing a fiduciary's decision '[a] federal court is to
        focus on the evidence before the truste[e] at the time of [his]
26      final decision and is not to hold a *de novo* factual hearing on
        the question of applicant's eligibility.' (Citations omitted).
27      Policy considerations favor allowing the fiduciary to decide an
        employee's benefit eligibility." (Citations omitted).
28  *Wolfe*, 710 F.2d at 394.

-5-

Respondent's Arbitration Brief

**EXHIBIT E**

24

1    As noted by the Fourth Circuit Court of Appeals in *Berry v. Ciba-Geigy*

2 *Corp.*, 761 F.2d 1003, 1007 (4th Cir. 1985) *overruled on other grounds by Cherepinsky*

3 *v. Sears Roebuck & Co.*, 455 F.Supp. 2d 470 (D.S.C. 2006):

4          "To review *de novo* all the evidence trustees **might** have
         considered is to transfer the administration of benefit and
5          pension plans from their designated fiduciaries to the federal
         bench.  Such substitution of authority is plainly what the
6          formulated standards in this field are intended to prevent."

7 (Emphasis added).

8          There are sound reasons for preventing excessive judicial intervention in

9 trust operations. The administration of a jointly trusteed trust fund is a complex matter,

10 requiring special expertise and familiarity with the trust's particular practices and

11 objectives. This broad discretion traditionally accorded the trustees, and its corollary of

12 a limited standard of review, reflects judicial recognition that the courts should be

13 reluctant to substitute their judgments for the judgments made by those with special

14 expertise and familiarity with trust fund matters. *See Johnson v. Botica*, 537 F.2d 930

15 (7th Cir. 1976); *Gomez v. Lewis*, 414 F.2d 1312 (3rd Cir. 1969); *Pete v. U.M.W.A. Welfare*

16 *Fund*, 517 F.2d 1275 (D.C. Cir. 1975).

17          Congress intended that trustees have primary responsibility for benefit

18 claims. At the same time, trustees have a fiduciary duty to properly administer benefit

19 claims and to ensure that trust fund monies are not expended erroneously and that no

20 participant receives benefits that another under like conditions was refused. If courts or

21 arbitrators were to abandon the traditional standard of review in cases such as these and

22 substitute their judgments in particular cases without giving due deference to judgments

23 of the trustees, the trustees' ability to administer the trust in a uniform manner might be

24 seriously impaired. *See e.g. Bakery & Confectionary Union*, 455 F. Supp. at 820.

25 ///

26 ///

27 ///

28 ///

-6-

Respondent's Arbitration Brief

EXHIBIT E
25

**D.    There is No Conflict of Interest in This Matter that Requires a Change in the Standard of Review**

If a plan administrator has a conflict of interest and the administrator cannot rebut it, the denial of benefits is reviewed de novo. *Nord v. Black & Decker Disability Plan*, 356 F.3d 1008 (9th Cir. 2004). In order to create a rebuttable presumption that an ERISA plan administrator violated its fiduciary obligations in denying benefits, there must be material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary. *Nord*, 356 F.3d at 1010. The material, probative evidence of a conflict of interest may consist of: (1) inconsistences in the plan administrator's reasons; (2) insufficiency of those reasons; and (3) procedural irregularities in the processing of beneficiary claims. *Id.* (internal citations omitted.)

Here, the PETITIONER had not created the threshold requirement of a rebuttable presumption and is unable to do so because there is no material, probative evidence that shows the TRUSTEES' self-interest caused a breach of their fiduciary obligation to him. As the administrative record in this matter shows, there is no evidence of any of the above factors discussed in *Nord*. There have been no inconsistencies with the TRUSTEES' reason for the denial of benefits. The TRUSTEES have consistently maintained the denial of PETITIONER'S application for service pension is based solely on PETITIONER'S failure to sever his employment with a signatory employer. The TRUSTEES' reason is sufficient and required under both the PLAN and the Internal Revenue Code. Lastly, there have been no procedural irregularities in the processing of PETITIONER'S application or the subsequent appeal hearing.

///
///
///
///
///

-7-

Respondent's Arbitration Brief

**EXHIBIT E**

26

## IV.  THE DECISION OF THE TRUSTEES HEREIN MEETS THE STANDARD OF REVIEW AND SHOULD BE SUSTAINED

**A.**    **The  Trustees  Committed  No  Errors  Of  Law  In  Denying PETITIONER's Service Pension Benefit While He Is Employed By The Hyatt Regency Islandia Hotel**

Sections 402 and 404 of ERISA, 29 U.S.C. §§ 1102, 1104, require that every employee benefit plan be established and maintained pursuant to a written instrument and that the plan must be administered "in accordance with the documents and instruments governing the plan." *See also Blau v. Del Monte Corp.*, 748 F.2d 1348, 1352 (9th Cir. 1984).  In the instant case, the ERISA-mandated instrument is the PLAN.

Pursuant to the Trust Agreement, the Trustees have full and exclusive authority to control and administer the PLAN and the exercise of their specific powers is discretionary.  Trust Agreement, Article IX, §§ 1-2.  A true and correct copy of the Trust Agreement is attached hereto as Exhibit "3", and incorporated herein by reference. The Trust Agreement provides the TRUSTEES with discretion to determine eligibility for benefits and to construe the terms of the PLAN.  Thus, the abuse of discretion standard applies and the TRUSTEES' findings may be overturned only if they are found to be clearly erroneous.  *See Jones*, 906 F.2d at 481-82.

The plain language of the PLAN is consistent with the TRUSTEES' interpretation.  The relevant provisions of the PLAN provide as follows:

> "Section 1.27 Retired Employee.  The term "Retired Employee" shall mean an Employee who has retired from Employment in the Industry within the meaning of Article III.
>
> . . .
>
> "Section 3.10 Service Pension.  An employee shall be eligible to retire after January 1, 1998, on a Service Pension for the first of any month following the date he or she has accrued a total of at least thirty (30) Past and Future Service Credits, at least one of which must be Future Service. (Emphasis added.)
>
> "Section 3.10 Amount of Service Pension.  The amount of an employee's Service Pension shall be the amount of his or her monthly  Normal  Retirement  Pension  determined  under Section 3.02 as though he or she had retired on his or her Normal Retirement Date."

-8-

**EXHIBIT E**

**27**

1    The record of the Appeal Hearing demonstrates that PETITIONER is
2 engaged in continuous employment at the Hyatt Regency Islandia Hotel. PETITIONER
3 has not provided the TRUST FUND with an Employer's Certification verifying that he
4 has severed his employment from the Hyatt Regency Islandia Hotel.  Consequently, a
5 Service Pension Benefit cannot be awarded to PETITIONER as he has not retired from
6 service in the Industry as required by the terms of the PLAN.

7    The TRUSTEES' decision was not clearly erroneous as they followed the
8 clear language of the PLAN in their determination that the PETITIONER is not eligible
9 to retire and therefore not eligible for a Service Pension Benefit under the terms of the
10 Pension Plan as he has not served his employment with the Hyatt Regency Islandia
11 Hotel.

12   The PLAN at issue is a qualified plan under Internal Revenue Code Section 401(a)
13 and in administering the benefits the TRUSTEES must follow the clear language of the
14 Code as well as the Treasury Regulations and the applicable Revenue Rulings.
15 According to the Treasury Regulations, the primary reason qualified pension plans are
16 established and maintained by employers is to provide systematically for the payment of
17 definitely determinable benefits to employees over a period of years, usually for life,
18 _after retirement_. Tres. Reg. Sec. 1.401-1(b)(1)(i) (Emphasis added). Generally, a
19 qualified pension plan may not distribute benefits to participants before they reach
20 normal retirement age while they still are _actively employed_.  A pension plan which
21 permits the participants, prior to any severance of employment (e.g. retirement,
22 disability, or death) to withdraw all or a part of the funds accumulated on their behalf
23 that consists of employer contributions or increments thereon is inconsistent with the
24 accepted concept of a pension plan under the requirements of section 401(a) of the Code.
25 _See_ Rev. Rul. 56-693, 1956-2 CB 282 _as modified by_ Rev. Rul. 60-323, 1960-2 C.B.
26 148; Rev. Rule 74-417, I.R.B. 1974-35, 6.  Copies of the Revenue Rulings are attached
27 hereto as Exhibit "4."

28   Applying the above law to the matter at hand, it is clear PETITIONER is not

-9-

Respondent's Arbitration Brief

**EXHIBIT** F.

28

1  entitled to benefits as he is still <u>actively employed</u> and has not reached normal retirement

2  age under the Plan. Thus, the TRUSTEES made no errors of law and their decision

3  should be upheld.

4

5  **B.    The Trustees Have Not Acted Arbitrarily or Capriciously in the Exercise of Their Discretion**

6

7         "According to the clear weight of federal authority, the actions of the

8  trustees in the administration of the pension plan must be sustained as a matter of law

9  unless plaintiff can prove such activities have been arbitrary or capricious." *Dennard*

10  *v. Richards Group*, 681 F.2d 306, 313 (5th Cir. 1982), *citing Bayles v. Central States*, 602

11  F.2d 97, 99 and 100 n.3 (5th Cir. 1979).

12         In determining whether the trustees' actions were arbitrary or capricious,

13  or in bad faith, the following must be considered:

14

15  "(1)  whether the Trustees' interpretation [of the plan] is contrary to the language of the provision in question or renders provisions of the plan superfluous;

16

17  "(2)  whether it is consistent with Plan's purposes;

18  "(3)  whether it is consistent with provisions' purpose;

19  "(4)  whether it is consistent with prior similar interpretation and whether the participants had notice of the TRUSTEES' interpretation."

20

21  *Donovan v. Carlough*, 576 F. Supp. 245, 249 (D.C. D.C. 1983). "The application of

22  these factors is not formulaic, however, and the weight given to each will vary according

23  to the context of the case." *Id.* The Trustees' decision "need not be the best possible

24  decision, only one with a rational justification." *Griffis v. Delta Family-Care Disability*,

25  723 F.2d 822, 825 (11th Cir. 1984), *cert. denied*, 467 U.S. 1242 (1984).

26         The record of the Appeal Hearing clearly demonstrates that the TRUSTEES

27  did not act arbitrarily and capriciously. The TRUSTEES interpreted the PLAN pursuant

28  to its express provisions and in accordance with the provisions' plain and apparent

-10-

**EXHIBIT E**
**29**

1   meaning.  The definition of "Retired Employee" and the qualifications for a Service
2   Pension Benefit are clearly set out in the PLAN.
3          The purpose of the PLAN is to provide retirement, death, and disability
4   benefits to workers and their families once they have completed the required number of
5   years of service. Service Pension Benefits under the PLAN provide an unreduced benefit
6   to a participant much earlier than his normal retirement age, upon satisfaction of the
7   eligibility criteria. For this reason, TRUSTEES restrict an service pension retiree's post-
8   retirement employment.  By failing to cease working for the Hyatt Regency Islandia
9   Hotel, PETITIONER is performing work that precludes him from being classified as a
10  "Retired Employee" under the PLAN.  The requirement of severance of employment is
11  consistent with the purpose of the PLAN and the Internal Revenue Code, which
12  precludes in service distributions prior to normal retirement age.
13         The TRUSTEES have a fiduciary duty to properly administer the PLAN and
14  to ensure that TRUST FUND monies are not expended erroneously. Additionally, the
15  TRUSTEES must apply their PLAN uniformly and consistently to all PLAN participants.
16  The PETITIONER has not provided the TRUST FUND proof of retirement; thus, the
17  PETITIONER is not entitled to a Service Pension Benefit.
18         Accordingly, the TRUSTEES' decision to deny PETITIONER's application
19  for a Service Pension Benefit was not arbitrary or capricious.  The plain language of the
20  PLAN, along with the purpose of the provisions, clearly show that the decision was a
21  logical interpretation of the PLAN applied to the particular facts of PETITIONER's case.
22
23  **C.    The Trustees' Findings Were Based Upon Substantial Evidence**
24         For the reasons set forth above, it is clear that the TRUSTEES' findings
25  were based upon substantial evidence and should not be re-weighed in this proceeding.
26  "Substantial evidence" has repeatedly been defined as:
27         "Such relevant evidence as a reasonable mind might accept as
            adequate to support a conclusion. . . .  This is something less
28         than the weight of the evidence, and the possibility of drawing

-11-

**EXHIBIT E**
**30**

1  two inconsistent conclusions from the evidence does not
2  prevent an administrative agency's findings from being supported by substantial evidence." (Citations omitted).

3  *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1988); *Boggs v. Lewis*, 57 Lab. Cas.
4  (CCH) P12, 562, ¶ 6 (D.C. D.C. 1968).

5      In the case at bar, the TRUSTEES' decision was based upon the
6  PETITIONER's continued employment with the Hyatt Regency Islandia Hotel and
7  admissions made by the PETITIONER. The TRUSTEES' decision was made after due
8  consideration of the administrative record on appeal in accordance with the express
9  provisions of the PLAN and applicable provision of the Internal Revenue Code. The
10 TRUSTEES' decision was therefore based upon substantial evidence and must be
11 upheld on that basis.

### V. Conclusion

13     The TRUSTEES must administer the PLAN uniformly and in a non-
14 discriminatory manner. The decision that the PETITIONER was not entitled to a service
15 early retirement benefit because of his work at the Hyatt Regency Islandia Hotel was
16 based upon a literal application of the provisions of the PLAN, the particular facts of the
17 case, and the relevant case law. The TRUSTEES' decision is not erroneous as a matter
18 of law, was not arbitrary or capricious, and was based upon substantial evidence.
19 Accordingly, the TRUSTEES' decisions to deny PETITIONER's application for a
20 Service Pension Benefit should be sustained.

22 DATED: *August 2, 2007*                    BOARD OF TRUSTEES OF THE
                                            SAN DIEGO UNITE-HERE PENSION FUND

25 By: _____
                                            Melissa W. Cook, Esq.
26                                          Kerry Kessler Fennelly, Esq.
                                            MELISSA W. COOK & ASSOCIATES
27                                          3444 Camino del Rio North, Suite 106
                                            San Diego, California 92108
28                                          Attorney for Respondent

-12-

Respondent's Arbitration Brief

**EXHIBIT E**
31

**EXHIBIT E**

EXHIBIT 4 of EXHIBIT E

Page 1

Rev. Rul. 56-693; 1956-2 C.B. 282;
1956 IRB LEXIS 81, *

LEXSEE REV. RUL. 56-693

Revenue Ruling 56-693

Rev. Rul. 56-693; 1956-2 C.B. 282; 1956 IRB LEXIS 81

July 1956

[*1]

**SUBJECT MATTER:** SECTION 401.-QUALIFIED PENSION, PROFIT-SHARING, AND
STOCK BONUS PLANS

**TEXT:**

Although an employees' qualified pension plan may provide benefits prior to normal retirement,
such as disability and death benefits, which are only incidental to the main purpose of the plan, an
employees' pension plan which permits participants, prior to any severance of their employment or
the termination of the plan, to withdraw all or a part of the funds accumulated on their behalf, in
times of a financial need or otherwise, will fail to meet the requirements of section 401 (a) of the
Internal Revenue Code of 1954. However, in a plan which can be properly considered as a profit-
sharing plan, a similar provision would not necessarily prevent qualification.

Advice has been requested whether an employees' savings plan which permits participants, prior
to any severance of their employment or the termination of the plan, to withdraw all or a part of the
funds accumulated on their behalf, will meet the requirements of a qualified plan under section
401(a) of the Internal Revenue Code of 1954.

An employer established an employees' savings plan under which the employer agreed to
contribute an amount equal to 50 percent  [*2]  of the amount contributed by the employee
participants. Contributions by the employees are limited to ten percent of their compensation.
Amounts contributed by the employer are not, in any way, limited to profits. Benefits under the plan
are determined as the amount of retirement income which the total of all contributions, plus
earnings thereon, standing to the credit of the participant will purchase at the time of retirement.
Thus, the plan being a money purchase pension plan, it must meet the requirements of section 401
(a) of the Code pertaining to a pension plan in order to be considered a qualified plan.

Under the provisions of the plan, participants are entitled to withdraw all or a part of their
contributions, at any time, together with a share of the employer's contributions computed on a
graduated vesting basis, upon establishing a financial need therefor. This privilege of withdrawal is
uniformly applicable to all participants.

Section 1.401-1 of the Income Tax Regulations defines a pension plan as a plan established and
maintained by an employer primarily to provide systematically for the payment of definitely
determined benefits to his employees over a period of years, usually  [*3]  for life, after retirement.
The word "primarily" in the definition of a pension plan was intended to mean that such a plan is not
precluded from meeting the applicable requirements for qualification merely because it provides

**EXHIBIT E**

**33**

Rev. Rul. 56-693; 1956-2 C.B. 282;
1956 IRB LEXIS 81. *

benefits prior to normal retirement, such as for disability or death benefits, which are only incidental to the main purpose of the plan. However, a pension plan which permits the participants, prior to any severance of employment (e. g. retirement, disability, or death) to withdraw all or a part of the funds accumulated on their behalf is inconsistent with the accepted concept of a pension plan which meets all of the requirements of section 401 (a) of the Code.

Accordingly, it is held that, although an employees' qualified pension plan may provide benefits prior to normal retirement, such as disability and death benefits, which are only incidental to the main purpose of the plan, an employees' pension plan which permits the participants, prior to any severance of their employment or the termination of the plan, to withdraw all or a part of the funds accumulated on their behalf, in times of a financial need or otherwise, will fail to meet the requirements of section 401 (a) of the Code.  [*4]  However, in a plan which can be properly considered as a profit-sharing plan, a similar provision would not necessarily prevent qualification.

**EXHIBIT E**

**34**

Rev. Rul. 60-323; 1960-2 C.B. 148;
1960 IRB LEXIS 36, *

Page 1

## LEXSEE REV. RUL. 60-323

## Revenue Ruling 60-323

Rev. Rul. 60-323; 1960-2 C.B. 148; 1960 IRB LEXIS 36

July 1960

[*1]

**SUBJECT MATTER:** SECTION 401.-QUALIFIED PENSION, PROFIT-SHARING, AND STOCK BONUS PLANS

**TEXT:**

An employees' pension plan will not be denied qualification because it contains provisions permitting participants to withdraw their voluntary contributions which are made in addition to their compulsory contributions, where such withdrawals do not affect the member's participation in the plan, the employer's past or future contributions on his behalf, the basic benefits provided by both the participant's and the employer's nonwithdrawable contributions, and no interest is allowable with respect to the contributions withdrawn either at the time of withdrawal or in computing benefits at retirement.

Revenue Ruling 56-693, C.B. 1956-2, 282, and Part 2 (c) (2) of Revenue Ruling 57-163, C.B. 1957-1, 128, modified.

Advice has been requested concerning the effect of a provision, in an otherwise qualified employees' pension plan, permitting the participants to withdraw their voluntary contributions which are made in addition to their compulsory contributions.

A retirement plan for the benefit of the employees of a life insurance company is funded under a deposit administration type of arrangement with the employer company acting  [*2]  as insurer. Under the terms of the plan, the employer contributes an amount equal to five percent of each participant's earnings and each participant must contribute four percent of his earnings. The participants may also make additional contributions of from one to six percent of their earnings on a voluntary basis.

The combined contributions by the employer and the employee participants are set aside in a separate fund to which interest of not less than two percent is added annually. This fund represents the reserve for benefits provided for under the plan and is maintained in accordance with applicable state insurance laws to which the employer is subject as a life insurance company. Upon retirement the accumulated employee and employer contributions then standing to a member's credit are applied to provide him with an annuity.

The plan has been held to qualify under section 401 (a) of the Internal Revenue Code of 1954.

An amendment to the plan permits any member who has not commenced receiving a retirement benefit under the plan to withdraw his voluntary contributions in amounts of not less than $1,000,

**EXHIBIT E**

35

Rev. Rul. 60-323; 1960-2 C.B. 148;
1960 IRB LEXIS 36. *

without interest. According to the plan, the interest accumulated on any such [*3] withdrawn contributions will be forfeited forever by the participant.

Part 2 (c) (2) of Revenue Ruling 57-163, C.B. 1957-1, 128, refers to Revenue Ruling 56-693, C.B. 1956-2, 282, and holds that although a pension plan may provide incidental benefits prior to normal retirement, such as disability and death benefits, it will fail of qualifications if it permits participants, prior to severance of employment or termination of the plan, to withdraw all or part of the funds accumulated on their behalf, except their own contributions on discontinuance of participation.

Under the terms of the plan in question, when a participant exercises the right to withdraw his voluntary contributions, it shall in no way affect his participation in the plan, the employer's past or future contributions on his behalf, or the basic benefits provided by both the participant's and the employer's nonwithdrawable contributions. Further, no interest is allowable with respect to the contributions withdrawn either at the time of withdrawal or in computing benefits at retirement.

Accordingly, it is held that, under the facts of the present plan, the provision permitting participants to withdraw their own voluntary [*4] contributions will not, of itself, disqualify the otherwise qualified plan.

Revenue Ruling 56-693, C.B. 1956-2, 282, and Part 2 (c) (2) of Revenue Ruling 57-163, C.B. 1957-1, 128, are hereby modified to the extent that a pension plan will not be denied qualifications because it contains provisions permitting a participant to withdraw his voluntary contributions which are made in addition to his compulsory contributions, where such withdrawals do not affect the member's participation in the plan, the employer's past or future contributions on his behalf, the basic benefits provided by both the participant's and the employer's compulsory contributions, and, under the provisions of the plan, no interest is allowable with respect to the contributions withdrawn either at the time of withdrawal or in computing benefits at retirement.

**EXHIBIT E**

36

Rev. Rul. 74-417; 1974-2 C.B. 131;
1974 IRB LEXIS 139, *

LEXSEE REV. RUL. 74-417

Revenue Ruling 74-417

Rev. Rul. 74-417; 1974-2 C.B. 131; 1974 IRB LEXIS 139

July 1974

[*1]

**SUBJECT MATTER:** Section 401.-Qualified Pension, Profit-sharing and Stock Bonus Plans

**APPLICABLE SECTIONS:**

26 CFR 1.401-1: Qualified pension, profit-sharing, and stock bonus plans.

**TEXT:**

**Voluntary contributions to money purchase plan; withdrawal provision.** An employer-funded money purchase pension plan that permits participants to make limited voluntary contributions and provides that withdrawals from a participant's account may be made prior to retirement to meet educational expenses of his spouse or children, with no restriction limiting the withdrawals to the participant's contributions plus increments thereon, does not qualify under section 401 (a) of the Code.

Advice has been requested whether a plan qualifies as a pension plan under section 401 (a) of the Internal Revenue Code of 1954 if it contains the provisions for withdrawals described below.

A money purchase pension plan intended to qualify under section 401 (a) of the Code provides benefits funded through employer contributions of 15 percent of the participants' compensation plus voluntary contributions of employees of up to ten percent of their compensation. The plan also provides that distributions may be made only to retired participants except that any necessary [*2] amounts may be withdrawn from a participant's account at any time to meet educational expenses of college and graduate school students who are either spouses or children, of the plan participant. There is no restriction in the plan on the portion of a participant's interest that may be used for these educational payments.

Section 1.401-1 (b) (1) (i) of the Income Tax Regulations provides that a pension, plan is a plan established and maintained by an employer primarily to provide systematically for the payment of definitely determinable benefits over a period of years, usually for life, after retirement.

A qualified pension plan may permit the withdrawal of funds by a participant, prior to termination of employment, but only if such withdrawals will not exceed the participant's voluntary contributions plus any increments actually earned on those contributions. See Rev. Rul. 69-277, 1969-1 C.B. 116.

The subject plan contains no provisions for restricting the withdrawals for educational payments to amounts not to exceed the participant's contributions plus increments thereon.

**EXHIBIT E**

Page 2

Rev. Rul. 74-417; 1974-2 C.B. 131;
1974 IRB LEXIS 139. ▪

Accordingly, this plan does not qualify as a pension plan under section 401 (a) of the Code.

**EXHIBIT** E

38

**PROOF OF SERVICE**

1

2     I, the undersigned, declare that I am employed in the County of San Diego, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 3444 Camino del Rio North, Suite 106, San Diego, California 92108; I am employed in the office of a member of the bar of this Court at whose direction I served a copy, including all exhibits, if any, on **November 30, 2007**, of the following document(s):

3

4

5     NOTICE OF PETITION AND PETITION FOR ORDER
    VACATING ARBITRATION AWARD

6

7 by placing a true copy thereof in an envelope addressed to the person(s) named below at the addresses(es) shown:

8     Timothy L. Brictson, Esq.
    Law Office of Brictson and Cohn

9     2214 Fifth Avenue
    San Diego, CA 92101

10     Attorney for Charles Yip

11 ☒   **By United States mail:** I placed a true copy in a sealed envelope or package addressed to the person(s) at the address(es) indicated above on the above-mentioned date and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

12

13

14

15 ☐   **By Facsimile:** From facsimile machine telephone number (619) 280-4304, on the above-mentioned date, I served a full and complete copy of the above-referenced document(s) by facsimile transmission to the person(s) at the number(s) indicated.

16

17 ☐   **By Personal Service:** I placed a true copy in a sealed envelope addressed to each person(s) named at the address(es) shown and gave same to a messenger for personal delivery before 5:00 p.m. on the above-mentioned date.

18

19 ☐   **By Next Day Mail:** I placed a true copy in a sealed envelope addressed as indicated above on the above-mentioned date. I am readily familiar with this firm's practice of collection and processing of correspondence for delivery by next day mail. Pursuant to that practice, envelopes placed for collection at designated locations during designated hours with a fully completed airbill under which all delivery charges are paid by this firm that same day in the ordinary course of business.

20

21

22

23     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

24     Executed on **November 30, 2007,** at San Diego, California.

25

26     *Marion D. Nelson*
    Marion D. Nelson

27

28

---

Proof of Service

JS 44 (Rev. 11/04)

ORIGINAL

**CIVIL COVER SHEET**

FILE BY FAX

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

San Diego UNITE-HERE Pension Fund

07 NOV 30 PM 12:24
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

**(b)** County of Residence of First Listed Plaintiff **San Diego**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Melissa W. Cook & Associates 619-280-4302
3444 Camino del Rio North, Suite 106, San Diego, CA 92108

**DEFENDANTS**

Charles ...

'07 CV 2262 WQH (BLM)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)
Timothy Brictson, Esq., Law Office of Brictson & Cohn
2214 Fifth Avenue, San Diego, CA 92101

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | | ☐ 710 Fair Labor Standards Act | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | |

**PERSONAL INJURY**
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

☒ 791 Empl. Ret. Inc. Security Act

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

☐ 790 Other Labor Litigation

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
9 U.S.C. Section 10; 29 U.S.C. Section 1332
Brief description of cause:
Petition to Vacate Arbitration Award in ERISA matter

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 11/30/2007

SIGNATURE OF ATTORNEY OF RECORD
Jerry Jennelly

**FOR OFFICE USE ONLY**

RECEIPT # 144950 AMOUNT $350 APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

Sea 11/30/07

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 144950    — SH**

**November 30, 2007
12:24:19**

**Civ Fil Non-Pris
07—02262**
Judge..: WILLIAM Q HAYES
Amount.:                    $350.00 CK
Check#.: BC043868

**Total—>  $350.00**

FROM: SD UNITE-HERE PENSION FUND V.