1    Timothy L. Brictson, 174907
     BRICTSON AND COHN
2    2214 Fifth Avenue
     San Diego, California 92101
3    Tel. 619. 296-9387
     Fax. 619. 232-0583
4
     Attorneys for
5    CHARLES YIP
     SILVIA QUINTERO
6

FILED

08 JAN -4  AM 11: 59

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____    DEPUTY

7

8                    UNITED STATES DISTRICT COURT

9

10                   SOUTHERN DISTRIT OF CALIFORNIA

11

12   SAN DIEGO UNITE HERE PENSION
     FUND                                    Case No. 07 CV 2261 JLS (JMA) &
13                                                     07 CV 2262 WOH (BLM)
     Petitioner, and Cross Respondent
14                                           NOTICE OF LODGMENT IN SUPPORT OF:
     v.                                      PETITION TO CONSOLIDATE [FRCP §42];
15                                           JOINT OPPOSITION TO PETITION FOR
     CHARLES YIP                             ORDERVACATING ARBITRATION AWARD
16   SILVIA QUINTERO                         [9 USC §10]; AND
                                              JOINT PETITION TO ENFORCE AWARD
17   Respondent and Cross Petitioners         [9 USC §9].

18

19

20           CHARLES YIP and SILVIA QUINTERO  hereby submit the following documents in

21   support of their Petition To Consolidate [FRCP §42]; Joint Opposition To Petition For Order

22   vacating Arbitration Award [9 USC §10]; and Joint Petition To Enforce Award

23
     [9 USC §9] filed herewith.
24

25       1.  Arbitration Brief Of Petitioner, Charles Yip, dated 8/6/07

26       2.  Post Arbitration Brief Of Petitioners Yip And Quintero, dated 8/20/07

27       3.  Award of Arbitrator, re Charles Yip v. Board of Trustees of the San Diego UNITE-HERE

28

BRICTSON & COHN
ATTORNEYS AT LAW
SAN DIEGO

                                              1

NOL OF YIP & QUINTERO PETITIONS RE CONSOLIDATION, VACATE, & CONFIRM AWARD

1    Pension Fund, Case Number  736200014007 LYMC, dated 8/29/07

2    4.   Award of Arbitrator, re Sylvia Quintero v. Board of Trustees of the San Diego UNITE-

3    HERE Pension Fund, Case Number  736200013707 LYMC, dated 8/29/07

4    I declare under penalty of perjury that the documents attached hereto are true and complete copies

5    of what they seek to represent.

6

7

8    Dated: January 3, 2008

9    Timothy Brictson
     LAW OFFICE OF BRICTSON & COHN
10   Attorneys for
     CHARLES YIP and SILVIA QUINTERO

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
Timothy L. Brictson, 174907
BRICTSON AND COHN
2
2214 Fifth Avenue
San Diego, California 92101
3
Tel. 619. 296-9387
Fax. 619. 232-0583
4

Attorneys for Plaintiff / Petitioner
5
CHARLES YIP

6

7

8
**AMERICAN ARBITRATION ASSOCIATION**

9

10

11
CHARLES YIP

Plaintiff / Petitioner,
12

v.
13

BOARD OF TRUSTEES OF THE SAN
14
DIEGO UNITE HERE PENSION FUND,
and ALLIED ADMINISTRATORS
15

Defendants / Respondents
16

Case No. 736200014007 LYMC

ARBITRATION BRIEF OF PETITIONER,
CHARLES YIP

Date: August 8, 2007
Arbitrator: Phillip Tamoush

17
### I) INTRODUCTION

18      Petitioner, CHARLES YIP, maintains that Respondents wrongly denied him a Service

19  Pension as described in section in Section 3.10 of the Plan, which states:

20      **Section 3.10 Service Pension**

21       An employee shall be eligible to retire after January 1, 1998, on a Service Pension for the

22  first of any month following the date he or she has accrued a total of at least 30 Past and

23  future Service Credits.

24  [Article III, Section 3.10, of the Restated Pension Plan of San Diego Hotel and Restaurant

25  Employees Pension Fund (hereinafter "the Plan"), p. 19 of the Administrative Record of

26  these proceedings to date.]

27      Respondents, the Plan Administrator, ALLIED ADMINISTRATORS, and the Trustees,

28  the BOARD OF TRUSTEES OF THE SAN DIEGO UNITE HERE PENSION FUND, denied

BRICTSON & COHN
ATTORNEYS AT LAW
SAN DIEGO

ARBITRATION BRIEF OF CHARLES YIP, PETITIONER

1     Mr. Yip his Service Pension, despite his 30 years of Service. Mr. Yip asserts that in denying him

2     benefits the following occurred.

3     a)   Respondents violated the Employee Retirement Income Security Act, 29 U.S.C. §1001, *et*

4        *seq.*, including 29 U.S.C. §1132, and Mr. Yip seeks to enforce his rights to benefits under the

5        specific terms of the Plan, and to clarify his rights to future benefits under the terms of the

6        Plan. Mr. Yip maintains that the plain language of the Plan establishes that he is entitled to a

7        Service Pension, and that Respondents incorrectly denied him that benefit.

8     b)   Respondents breached their fiduciary duties in violation of ERISA, including 29 U.S.C.

9        §§1104, 1109, 1132, in failing to "discharge his duties with respect to a plan solely in the

10       interest of the participants and beneficiaries … for the exclusive purpose of providing benefits

11       to participants … in accordance with the documents and instruments governing the plan…."

12       29 U.S.C. §1104 (a)(1). This standard is derived from the common law of trusts, which

13       require that a trustee strictly refrain from placing himself in a position where his personal

14       interest may conflict with the interest of the beneficiary.

15     c)   Mr. Yip maintains that Respondents should be estopped from asserting that one must quit

16       their job before being eligible to collect a Service Pension, because Mr. Yip will present

17       evidence that the Trustees of the Pension fund specifically and repeatedly touted information

18       to the contrary.

19        Based on the above, Mr. Yip maintains that any hearing regarding the denial of his

20     benefits should not limited to merely the documents contained in Administrative Record already

21     created (pages 0 to 83, and the transcript of the October 25, 2006 hearing). Mr. Yip maintains

22     that prior to any hearing he should be provided with the following information, and that Mr. Yip

23     should be allowed to present such relevant evidence at hearing:

24

25     •   The Name and Address of every person who "had been providing the Administrative

26       Office with retirement dates that were inaccurate" referred to in the NOTICE TO

27       PARTICIPANTS, attached to Mr. Yip's 10/3/06 letter to Ms. Cook and previously

28

BRICTSON & COHN
ATTORNEYS AT LAW
SAN DIEGO

1     provided, as page 81, to Mr. Yip's Exhibit A, during his administrative hearings to date.

2   • The Name and Address of every person granted benefits per the APPLICATIONS

3     PRESENTED FOR APPROVAL TO THE BOARD OF TRUSTEES AT TEHIR

4     MEETING, attached to Mr. Yip's 10/3/06 letter to Ms. Cook and previously provided, as

5     page 82, to Mr. Yip's Exhibit A, during his administrative hearings to date.

6

7   • The Name and Address of every person granted pension benefits, but who's date last

8     worked was listed as "Still working", in the minutes of the Pension Trust Meetings from

9     January 1, 1998 to January 1, 2007.

10  • The Name and Address of every person denied pension benefits, because they were "still

11    working" from January 1, 1998 to January 1, 2007.

12

13  • The Minutes of all Board of Trustees from January from January 1, 1998 to January 1,

14    2007, and as previously requested by Mr. Yip in his October 3, 2006 and August 15, 2006

15    letters.

16  • Any and all documents that establish "how the new procedure [requiring employment

17    severance] was instituted" as previously requested by Mr. Yip in his October 3, 2006

18    August 15, 2006 letters.

19

20  • Any and all documents which establish when "the new procedure [requiring employment

21    severance] was instituted" as previously requested by Mr. Yip in his October 3, 2006

22    August 15, 2006 letters.

23  • Any and all documents which establish how and/or when the plan participants were

24    notified this "new procedure [requiring employment severance] was instituted" as

25    previously requested by Mr. Yip in his October 3, 2006 August 15, 2006 letters.

26

27  • For each Service Pension recipient who was "still working" when those benefits began, a

28    summary of the benefits, stating:

BRICTSON & COHN
ATTORNEYS AT LAW
SAN DIEGO

1
2
3
4
5
6
7
8

- The name and address of the recipient;

- The date benefits began;

- The number of days of employment reported for the month immediately before the benefits began;

- The number of days of employment reported for the month immediately after the benefits began; &

- The amount of contributions made on each recipient

9
10

- The names and addresses of all the Trustees on the Board of Trustees of San Diego UniteHERE Pension Fund from January 1, 1998 to January 1, 2007.

11
12
13
14
15

In addition, Mr. Yip requests the right to depose witnesses, including but not limited to Debra Radovich (of the Pension Department) and Jeff Eatchel (former Secretary-Treasurer of Local 30, and current Chairman of the Trustees) after production of the above requested documents and before the arbitration.

16
17
18
19
20
21
22

In addition, Mr. Yip seeks to produce at hearing testimony of witnesses as to the provision and/or denial of benefits. Mr. Yip requests that after Respondents produces the above information, that subpoenas be issued to relevant witnesses. At this time, Mr. Yip is prepared to produce several witnesses on those issues, but some of whom have advised that they will not appear without a subpoena. Attached hereto is a copy of the undersigned's July 5, 2007 letter to Ms. Cook, Respondents' attorney, requested that information.

23

## II) SUMMARY OF RELEVANT FACTS

24
25
26
27
28

The following facts are undisputed. When Mr. Yip applied for his Service Pension in July 2006 he had 30 years of eligible past and future service credits. When Mr. Yip applied for his Service Pension, Mr. Yip was provided the application for the pension from Deborah Radovich of Allied Administrators. Mr. Yip completed that application in full. That application is contained

in pages 62-64 of the Administrative Record. At the time Mr. Yip completed that application, Mr.
Yip was an Officer of Local 30, with the title of Recording Secretary.  At the time, another
Officer of Local 30, Jeff Eatchel, held the position of Secretary-Treasurer of Local 30.  Mr.
Eatchel also held a dual role, that of Chairman of the Trustees of the Plan. At the time Mr. Yip
applied for his Service Pension, there was significant internal strife amongst the officers of Local
30.  That strife was so significant, that the Western Regional office of the International Unite
Here took over the operation Local 30.  The International began to operate Local 30 under a
trusteeship. The San Diego Union reported on August 8, 2006:

> The action stripped Secretary-Treasurer Jeff Eatchel, President Nancy Browning of their
> officer positions and removed seven others from the local's executive board. ...Tensions
> between Eatchel and Browning have been festering in recent months and boiled over in
> the spring when Eatchel was re-elected to the secretary-treasurer's job and Browning led a
> slate that took seven of the nine executive board slots. ... Eatchel had complained to the
> international union that the board was blocking his ability to carry out his leadership
> duties.  Chiesa said the board did an internal audit of the local, held an administrative
> hearing and decided the best action was to take over the local to stabilize its leadership.
> She said the audit showed "a number of problems most of which involved sloppy
> bookkeeping," but she would not elaborate.

Prior to the Local being placed in a trusteeship, Mr. Yip was openly engaged in actions
that were specifically designed to place more checks and balances on the Secretary-Treasurer
position held by Mr. Eatchel. These actions included, but were not limited to, the mobilization of
rank and file members of Local 30 to attend Membership Meetings in order to vote down motions
supported by Mr. Eatchel, and / or to move for, vote for, and pass amendments to the by laws that
placed greater checks and balances on Mr. Eatchel's powers.

1   At all relevant times, Mr. Eatchel was Chairman of the Trustees of the Plan, <u>and</u> was

2   married to Sandra Eatchel, the Administrative Representative of Allied Administrators, the Plan

3   Administrator herein, and the direct supervisor of Deborah Radovich, the claims examiner who

4   processed Mr. Yip's pension application.

5   Only after Mr. Eatchel was removed from his position as Secretary-Treasurer of Local 30

6   did Allied advise Mr. Yip that they needed an additional form to be completed; a form which they

7   had not required before.  That form now required that a pension applicant resign his or her current

8   position.  This had <u>not</u> been a requirement prior to Mr. Eatchel being removed.  Moreover, as

9   described below, the plain language of the Plan does not require such a separation of employment

10  for a Service Pension.

11

12  ### III) THE LANGUAGE IN THE PLAN CALL FOR A DE NOVO REVIEW OF THE

13  ### ADMINISTRATOR'S DECISION

14  "[A] denial of benefits challenged under ERISA is to be reviewed under a de novo

15  standard unless the benefit plan gives the administrator or fiduciary discretionary authority to

16  determine eligibility for benefits or to construe the terms of the plan." <u>Firestone Tire & Rubber

17  Co. v. Bruch, 489 U.S. 101, 115, 103 L. Ed. 2d 80, 109 S. Ct. 948 (1989)</u>; <u>Bendixen v. Standard

18  Ins. Co., 185 F.3d 939, 942 (9th Cir. 1999)</u>. The Plan at issue herein does not give the Plan

19  Administrator discretion to accept or deny claims.  Nowhere in the Eligibility for Pension

20  Benefits section of the Plan  (p. 12 to 22 of the Administrative Record) does the Plan give the

21  administrator or fiduciary discretionary authority to determine eligibility for benefits or to

22  construe the terms of the Plan.  When the Plan is silent, the "default is that the administrator has

23  no discretion, and the administrator has to show that the plan gives it discretionary authority in

24  order to get any judicial deference to its decision." <u>Kearney v. Standard Ins. Co., 175 F.3d 1084,

25  1089 (9th Cir. 1999)</u> (en banc).

26

27  Indeed, Section 6.01 of the Plan, <u>Benefit Payments</u> (p. 32 of the Administrative Record)

28

BRICTSON & COHN
ATTORNEYS AT LAW
SAN DIEGO

1    states:

2        a) In general, an Employee who makes application in accordance with this Plan and the

3        rules and regulations of the Trustees, if any, and whom the Trustees determine to be

4        eligible, <u>shall be entitled</u> upon retirement to receive the monthly Benefits provided in

5        accordance with the provisions of this Plan.

6        [Section 6.01 of the Plan, <u>Benefit Payments</u> ,p. 32 of the Administrative Record, emphasis

7        added.]

8

9    Multiple cases directly on point establish that this language does <u>not</u> bestow discretion upon the

10   Plan Administrator, and that the de novo standard of review of the Plan Administrator's decision

11   is applicable.

12       The language used to confer discretion needs to  actually appear in the Plan documents,

13   rather than be implied. In <u>Walke v. Group Long Term Disability Ins., 256 F.3d 835, 839-40 (8th</u>

14   <u>Cir. 2001)</u> the court applied a de novo standard of review explaining that the abuse-of-discretion

15   standard of review applies only if the policy contains explicit discretion-granting language. In that

16   case, the policy claim provision stating that administrator will not pay benefits until he receives

17   "satisfactory proof" of entitlement was insufficient to bestow discretion on the plan administrator.

18   The Court held such wording merely states the obvious and did not confer discretion upon the

19   Plan Administrator, thus the de novo standard was applicable.  Similarly in <u>Bounds v. Bell</u>

20   <u>Atlantic Enterprises Flexible Long-Term Disability Plan, 32 F.3d 337, 339 (8th Cir. 1994)</u>, the

21   Court determined that language in the plan stating benefits would be paid "after [the

22   administrator] receives adequate proof of loss" did not confer discretion upon the administrator.

23   The wording of the plans in <u>Walke</u> and <u>Bounds</u>  are substantially similar to the wording in

24   the Plan at issue herein.  As such, the Arbitrator should review the denial of benefits  de novo.

25       Respondents' attorney in her July 25, 2007 letter to the undersigned referenced terms of

26

27

28

ARBITRATION BRIEF OF CHARLES YIP, PETITIONER

1   the Trust Agreement to substantiate Respondents' allegation that the Plan confers discretion upon

2   the Plan Administrator. However, the Trust Agreement is not the applicable document in

3   determining this issue. The Plan, which is the document provided to Plan participants, such as

4   Mr. Yip, is the applicable document.

5        Indeed, a review of the Administrative Record to date will confirm that the Trust

6

7   Agreement has not been part of the Administrative Record. Instead, Mr. Yip and Respondents

8   referenced the Plan in all matters prior to the forth coming Arbitration. Transcript from 10/25/06

9   Appeal Hearing, p. 5, l. 5-14, and Exhibit A. Accordingly, in this Arbitration, Respondents'

10  cannot be allowed to argue that only the Administrative Record created to date is admissible, and

11

12  then be allowed to submit evidence extrinsic to the Administrative Record to prove that claim.

13       Moreover, the language in the Trust Agreement cited by Respondents' attorney in her

14  July 25, 2007 letter regards a) the Trustee role, not the Plan Administrators; and b) the

15  Trustee's role in making decisions about the Trust itself, not in making decisions about claims

16  by Plan participants.

17  ## IV) RESPONDENTS' CONFLICT OF INTEREST WARRANT A DE NOVO REVIEW

18       The Ninth Circuit has held that even where the Plan calls for the "abuse of discretion"

19

20  standard of review, that standard can be "heightened" by a plan administrator's conflict of

21  interest. See Atwood v. Newmont Gold Co., 45 F.3d 1317, 1322 (9th Cir. 1995).

22       Respondents' obligation was to "discharge his duties with respect to a plan solely in

23  the interest of the participants and beneficiaries … for the exclusive purpose of providing

24  benefits to participants … in accordance with the documents and instruments governing the

25  plan…." 29 U.S.C. §1104 (a)(1). That standard is derived from the common law of trusts,

26

27  which require that a trustee strictly refrain from placing himself in a position where his

28  personal interest may conflict with the interest of the beneficiary. One of the most important

1    duties of a trustee is loyalty to the beneficiaries, and in applying that rule, Courts are less

2    concerned with unjust enrichment than they are with the ethical and efficient administration of

3    the trust. Corley v. Hecht Co. 530 F. Supp. 1155, 1163 (1982), citing, Eaves v. Penn 587 F2d

4    453, 457(10th 1979), and Bird v. Stein, 258 F.2d 168, 177 (5th Cir. 1958), cert. den., 359 U.S.

5    926, 79 S. Ct. 608, 3 L. Ed. 2d 628 (1959), and In re Bond and Mortgage Guarantee Co., 303

6    N.Y. 423, 430-431, 103 N.E.2d 721 (1952)

7

8        Mr. Yip can present evidence that the Chairman of the Pension Fund and Trustee, ,

9    who was involved in the decision to deny Mr. Yip his benefits, had a conflict of interest that

10   would reasonably influence him to deny benefits to Mr. Yip, and to deny benefits to similarly

11   situated plan participants who applied for Service Pensions after June 2006.

12       In a nutshell, Mr. Yip can present evidence that the Chairman of the Trust was the

13   Secretary-Treasurer for Local 30 just prior to the decision to deny Mr. Yip and others their

14   Service Pension.  At that time, Mr. Yip was openly influential in having rank and file members

15

16   of Local 30 present and pass motions to amend the by laws of the Local to instill greater

17   checks and balances over the Secretary-Treasurer for Local 30. At that time, Mr. Yip was

18   openly influential in having the International take over Local 30, which resulted in Mr. Eatchel

19   being removed from his position with Local 30.

20

21       Mr. Yip first applied for his Service Pension with Allied Administrators, prior to Mr.

22   Eatchel being removed from office.  At all relevant times, Mr. Eatchel was married to Sandra

23   Eatchel, a senior employee of Allied Administrators, Ms. Eatchel is the direct supervisor of

24   Deborah Radovich, the claims administrator handling Mr. Yip's for Allied.  Only after Mr.

25   Eatchel was removed from his position with Local 30, and after Mr. Yip initially applied for

26   the pension, did Allied advise Mr. Yip that they needed a certification of termination of his

27   employment before his application would be processed.  Allied did not require that

28

BRICTSON & COHN
ATTORNEYS AT LAW
SAN DIEGO

1   information when Mr. Yip first applied for the Service Pension prior to Mr. Eatchel being

2   removed from office.

3       Mr. Yip can also present evidence that numerous persons received Service Pensions,

4   who had not been terminated from employment, prior to Mr. Eatchel being removed from

5   office.  Mr. Yip can also present evidence that establishes that the Trustees of the Pension

6   Fund touted to rank and file members of Local 30 information that establishes the elements of

7   estoppel in regards to the Service Pension.

8

9       The Courts have held that less dramatic apparent conflicts of interests have warranted a

10  heightened standard of review.  For example, Courts have held that there is an apparent conflict

11  of interest where a long-term disability policy is both funded and administered by defendant. See

12  Bendixen, 185 F.3d at 943; Lang v. Long-Term Disability Plan of Sponsor Applied Remote

13  Tech., Inc., 125 F.3d 794, 797 (9th Cir. 1997).

14

15      Where the decision-maker has a substantial interest in denying the claim, the court may

16  lessen the deference it gives to the administrative determination virtually to the point where the

17  court's review is *de novo*. 29 US NITA § 1132.  Indeed, the Ninth Circuit has found "material,

18  probative evidence" of a serious conflict of interest to consist of "inconsistencies in the plan

19  administrator's reasons," Lang, 125 F.3d at 799; Tremain v. Bell Indus., Inc., 196 F.3d 970, 976

20  (9th Cir. 1999). Such an inconsistency can be shown by the contrast between the treatment of

21  Service Pensions before and after Mr. Eatchel's removal,  all while Mr. Eatchel remained

22  Chairman of the Pension Fund (the Trustees of the Fund) and while married to the boss of the

23

24  Plan Administrator.

25  /

26  /

27  /

28

1   **V) REGARDLESS OF THE STANDARD OF REVIEW, EVIDENCE OF OTHER PLAN**

2   **PARTICIPANTS WITH SUBSTANTIALLY SIMILAR QUALIFICATIONS IS**

3   **ADMISSIBLE, BECAUSE THAT INFORMATION WAS KNOWN AND AVAILABLE**

4   **TO THE PLAN ADMINISTRATOR WHEN SHE DENIED MR. YIP'S BENEFITS**

5
6           There is only one claims examiner over Local 30's Pension Fund.  That is Deborah

7   Radovich, and she has held that position for many years.  As such, Ms. Radovich knows whether

8   or not applicants other than Mr. Yip were awarded benefits without requiring termination of

9   employment.  Evidence of whether or not benefits were provided to some applicants, and not to

10  others, all who have the same qualifications, is relevant evidence as to whether or not the Plan

11  Administrator was acting arbitrarily.

12

13  **VI) REGARDLESS OF THE STANDARD OF REVIEW, MR. YIP IS ENTITLED TO A**

14  **SERVICE PENSION UNDER THE PLAIN LANGUAGE OF THE PLAN**

15          Mr. Yip applied for a Service Pension described in section in Section 3.10 of the Plan,

16  which states:

17          Section 3.10 Service Pension

18           An employee shall be eligible to retire after January 1, 1998, on a Service Pension for the

19          first of any month following the date he or she has accrued a total of at least 30 Past and

20          future Service Credits.

21          [Article III, Section 3.10, of the Restated Pension Plan of San Diego Hotel and Restaurant

22          Employees Pension Fund (hereinafter "the Plan"), p. 19 of the Administrative Record of

23          these proceedings to date.]

24          "Retired Employee" is defined in Section 1.27 of the Plan (p. 11 of the Administrative

25  Record) as: "The term 'Retired Employee' shall mean an Employee who has retired from

26  Employment in the Industry within the meaning of Article III."

27          Article III of the Plan, pages 14-22 of the Administrative Record, is titled ELIGIBILITY

28  FOR PENSION BENEFITS AND PENSION AMOUNTS.  Neither section 3.01, <u>Normal</u>

BRICTSON & COHN
ATTORNEYS AT LAW
SAN DIEGO

ARBITRATION BRIEF OF CHARLES YIP, PETITIONER

1  Pension, nor Section 3.03, Early Pension, nor Section 3.10, Service Pension, all which utilize the

2  term "retire", state that termination of employment is required.   As such, termination of

3  employment is not a requirement for a Service Pension.

4      Nevertheless, even if the Plan contained a definition of "retire" or "retirement" that

5  specifically called for the termination of employment, the terms of the Plan still do not require

6  termination of employment for a Service Pension.   This is because Section 3.11 of the Plan

7  specifically states that a Service Pension is the equivalent of a retirement pension. Section 3.11 of

8  the Plan, Amount of Service Pension, states:

9      **Section 3.11 Amount of Service Pension**

10      The amount of an employee's Service Pension shall be the amount of his or her monthly

11      Normal Retirement Pension determined under Section 3.02 *as though he or she had*

12      *retired* on his or her Normal Retirement Date.

13      [Section 3.11 of the Plan, p. 19 of the Administrative Record, emphasis added.]

14      As such, the Plan specifically states that for a Service Pension, a participant is entitled to

15  that pension after 30 years of past and future eligible service as though he or she had in fact

16  retired, regardless of the definition of "retired" or "retirement."   Therefore, Mr. Yip, having 30

17  years of eligible service, is entitled to a Service Pension, pursuant to the plain language of the

18  Plan, regardless of the standard of review.

19

20      **VII) CONCLUSION**

21      In view of all of the above, Mr. Yip respectfully requests that prior to a hearing on his

22  entitlement to benefits, that he be provided the information outlined in the summary of facts

23  above.  Upon receipt of that information, Mr. Yip should be entitled to conduct other reasonable

24  discovery in preparation of the hearing.  At the time of the hearing, Mr. Yip maintains that a de

25  novo standard of review should be applied, and that evidence should be admitted beyond the

26  Administrative Record. Moreover, Mr. Yip maintains that evidence as to persons who were

27  awarded and / or denied a Service Pension over the past is part of the information available to the

28  

BRICTSON & COHN
ATTORNEYS AT LAW
SAN DIEGO

ARBITRATION BRIEF OF CHARLES YIP, PETITIONER

1   Plan Administrator in deciding to deny Mr. Yip his pension, regardless of the standard of review

2   applied. Therefore, that information is relevant and admissible.

3                                              RESPECTFULLY SUBMITTED,

4

5   Dated: August 6, 2007

6

7                                              Timothy Brictson
                                               LAW OFFICE OF BRICTSON & COHN
                                               Attorneys for CHARLES YIP, Petitioner

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Timothy L. Brictson, 174907
BRICTSON AND COHN
2214 Fifth Avenue
San Diego, California 92101
Tel. 619. 296-9387
Fax. 619. 232-0583

Attorneys for Petitioners

## AMERICAN ARBITRATION ASSOCIATION

CHARLES YIP
MARIA QUINTERO

Plaintiff / Petitioner,

v.

BOARD OF TRUSTEES OF THE SAN
DIEGO UNITE HERE PENSION FUND,
and ALLIED ADMINISTRATORS

Defendants / Respondents

Case No. 736200014007 LYMC

POST ARBITRATION BRIEF OF
PETITIONERS YIP AND QUINTERO

Arb. Date: August 8, 2007
Arbitrator: Phillip Tamoush

### I
### INTRODUCTION

In response to the Arbitrator's August 10, 2007 letter, Petitioners submit the following.  In that letter, the Arbitrator stated that he would be applying a standard of proof that is referenced in the Arbitration submissions, which limits his review to:

- errors as to questions of law;
- whether the Trustee acted arbitrarily or capriciously in the exercise of their discretion; and
- whether the Trustee's findings of fact were supported by substantial evidence.

Petitioners continue to maintain that is the incorrect standard, but submit this brief in accordance with the Arbitrator's request.

POST ARBITRATION BRIEF OF YIP & QUINTERO, PETITIONERS

## II
## OTHERS RECEIVING THE BENEFITS WITHOUT SEPERATING FROM EMPLOYMENT

The Arbitrator has asked for the names of other persons Petitioners know began to receive benefits without being required to separate from employment.  At the time of the arbitration, upon questioning of the Arbitrator, and after much evasion by Respondent's counsel, Respondent's counsel contended that she had not performed any investigation into the possibility that others were receiving a Service Pension without being required to separate from employment. Respondent's counsel made threats about pursuing "fraud" actions against those persons. Clearly, Respondent's counsel's theatrics and claims of ignorance at the time of arbitration were disingenuous, given that Petitioner Yip had repeatedly written to Respondents advising them of those facts. Yip 3 letters dated 8/15/06 (one addressed directly to Respondent's counsel), 10/3/06, etc.

Moreover, Respondent could have easily produced the Plan Administrator, Debra Radovich of Allied Administrators, to rebut Mr. Yip's contentions if they were not true. Respondent's failure to respond to Mr. Yip's repeated letters stating others were receiving benefits without being required to separate from employment all should have been part of the administrative record.  Respondent's failure to respond directly to those concerns during the course of reviewing Petitioners' claims, and Respondent's failure to produce ANY contrary evidence, or even to request leave to produce such contrary evidence, for purposes of this arbitration leaves Petitioners' statements uncontroverted.  Therefore, the Arbitrator must accept Petitioners statements as true.

Section 412 of the California Evidence Code states:

> If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust.'

Cal. Evid. Code §412.

/

/

1    Section 413 of the California Evidence Code states:

2
3    In determining what inferences to draw from the evidence or facts in the case against a
     party, the trier of fact may consider, among other things, the party's failure to explain or to
     deny by his testimony such evidence or facts in the case against him, or his willful
4    suppression of evidence relating thereto, if such be the case.

5    Cal. Evid. Code §413.

6    Section 411 of the California Evidence Code states:

7    Except where additional evidence is required by statute, the direct evidence of one witness
     who is entitled to full credit is sufficient for proof of any fact.
8

9
     Cal. Evid. Code §411.
10

11   It is the general rule that the uncontradicted and unimpeached testimony of a witness to a

12   particular fact may not be arbitrarily disregarded; and is to be accepted as proof of the fact unless

13   sufficient grounds exist for disbelieving it. Plastic Pipe & Fittings Assn. V. Cal. Building

14   Standards (2004) 124 Cal.App.4th 1390, 1407.

15   Prior to the arbitration, Petitioner Yip repeatedly requested additional discovery regarding

16   this issue. Respondent failed to respond to those requests, and the Arbitrator has not given

17   Petitioners leave to subpoena that information despite Petitioners requests. Nevertheless, as Mr.
18
19   Yip testified at the hearing, he knows of at least 22 employees who received the service pension

20   without being required to separate from employment. They are: Terry Allen, Silvia Alvarez,

21   Allan Campbell, Enrique Cervantes, Alfred Clementson, Francisco Delgado, Roman Godinez,

22   Ezperanza Gonzalez, Felipe Hernandez, Reyna Hernandez Serafin Hernandez, Ronald Hughes,

23   Alfredo Lopez, Benjamin Lopez, Barbara O'Gorman, David Rodriguez, Pedro Rodriguez, Mirna
24
     Serna, Roberto Serna, Victor Soltero, Nena Soto, Jorge Talavera.
25

26   That list of persons is limited to persons that Petitioners had access to and who worked at

27   the two hotels (Hyatt and Holiday Inn) that Petitioners worked at. Given this limited sampling

28   pool, it is reasonable to conclude that additional participants who work at other hotels received

1   similar treatment prior to Petitioners filing their claims.

2       Treating some participants differently than others without explanation or justification is

3   the very definition of arbitrary and capricious. "A decision to deny benefits is arbitrary and

4   capricious if it results in the disparate treatment of one person from all other persons similarly

5   situated. " Foley v. IBEW Local Union 98 Pension Fund (2000) 112 F. Supp. 2nd 411, 416

6   [disparate treatment includes subjecting an individual to a stricter standard of proof than that

7

8   applied to any other individual similarly situated].

9       I conclude that even under this deferential standard, a reasonable jury could find that the
        trustees' decision to deny plaintiff the pension was arbitrary and capricious. I do not
10      believe that *any* reason will suffice to justify a benefits decision under the arbitrary and
        capricious standard, particularly when there is evidence that a plan provision was
11      interpreted differently in the case of one plan participant than in all other like cases. To
        uphold a benefits decision that was facially rational but treated a particular plan
12      participant differently from all others similarly situated would be to transform the
        arbitrary and capricious standard into a judicial rubber stamp and give plan administrators
13      the freedom to single out one plan participant for stricter scrutiny so long as a mere reason
        could be identified for their decision.
14

15

16  Foley v. IBEW Local Union 98 Pension Fund (2000) 91 F. Supp. 2nd 797, 805.

17      In view of the above, Petitioners should receive the Service Pension under any standard

18  of review.  Petitioner Yip repeatedly advised Respondent that there were "100s" of other

19  participants that Respondent had not required to separate from employment prior to Respondent's

20
    denial of benefits.  Respondent knew its own procedures and prior conduct prior to denying
21
    Petitioners benefits. Respondent has not even attempted to rebut Petitioners allegations of
22

23  disparate treatment, despite being advised in advance it was central to Petitioners contention and

24  being well within their power to do so.

25                          III
26              RECOMMENCING EMPLOYMENT

27      The Arbitrator has requested input from the parties as to the significance of section 3.12 of

28  the Plan that references "recommencing of employment."   The significance of that section

BRICTSON & COHN
ATTORNEYS AT LAW
SAN DIEGO

4 of 7

1    reiterates the lack of the decisive nature of a participants' employment status in determining

2    eligibility. That section specifically states that employees are entitled to benefits despite their

3    continued employment.

4
        Regardless of the content of Section 3.12, Respondents are strictly bound by the actual
5
     terms of Sections 3.10 and 3.11. Those sections regard the Service Pension at issue herein.
6
7    Those sections state:

8        **Section 3.10 Service Pension**

9        An employee shall be eligible to retire after January 1, 1998, on a Service Pension for the

10       first of any month following the date he or she has accrued a total of at least 30 Past and

11       future Service Credits.

12   Article III, Section 3.10, of the Restated Pension Plan of San Diego Hotel and Restaurant

13   Employees Pension Fund (hereinafter "the Plan"), p. 19 of the Administrative Record of these

14   proceedings to date. And:

15       **Section 3.11 Amount of Service Pension**

16       The amount of an employee's Service Pension shall be the amount of his or her monthly

17       Normal Retirement Pension determined under Section 3.02 *as though he or she had*

18       *retired* on his or her Normal Retirement Date.

19   Section 3.11 of the Plan, p. 19 of the Administrative Record, emphasis added.

20       As such, the Plan specifically states that for a Service Pension, a participant is entitled to

21   that pension after 30 years of past and future eligible service "as though he or she had in fact

22   retired", regardless of the definition of "retired" or "retirement." Therefore, Petitioners both

23   having 30 years of eligible service are entitled to a Service Pension.

24
             [T]he summary plan description is *binding*, and that if there is a conflict
25           between the summary plan description and the terms of the policy, the
             summary plan description shall *govern*. Any other rule would be, as the
26           Congress recognized, grossly unfair to employees and would undermine
             ERISA's requirement of an accurate and comprehensive summary.
27           [Original emphasis.]

28

BRICTSON & COHN
ATTORNEYS AT LAW
SAN DIEGO

POST ARBITRATION BRIEF OF YIP & QUINTERO, PETITIONERS

1  Hansen v. Continental Ins. Co. (5th 1991) 940 F.2d 971, 982; Washington v. Murphy

2  Oil USA, Inc., (2007) U.S. App. LEXIS 19546, 12-13.

3

4  As such, Respondents are bound by the words of Sections 3.10 & 3.11.  Those

5  sections state that once a participant has 30 years of vested service, that participant is

6  entitled to the pension "as though he or she had retired." Section 3.11.  If Respondent

7  argues that Section 3.12 is inconsistent with Section 3.11, Respondent is still bound by

8  the terms of Section 3.11:

9

10  ... ambiguity in the summary plan description must be resolved in favor of the
    employee and made *binding* against the drafter."

11

12  Hansen v. Continental Ins. Co. (5th 1991) 940 F.2d 971, 982; Washington v. Murphy

13  Oil USA, Inc., (2007) U.S. App. LEXIS 19546, 12-13. Therefore, Petitioners are

14  entitled to a Service Pension in accordance with Sections 3.11 and 3.12 of the Plan.

15

16                                      **IV**
                                  **CONCLUSION**
17

18  Evidence as to persons who were awarded and / or denied a Service Pension over the past

19  is part of the information available to the Plan Administrator in deciding to deny Petitioners their

20  Service Pension.  Therefore, that information is relevant and admissible.  Mr. Yip's testimony

21  was uncontradicted, despite Respondent knowing of his allegations prior to the hearing as

22  outlined in his numerous letters. Respondent had the power to present contrary  evidence, and

23  failed to do so.  Therefore, the trier of fact may infer that had Respondent produced the evidence,

24  that it actually would have supported Petitioners claims.

25  Nevertheless, Respondent is strictly bound by the terms of Section 3.11 of the Plan,

26

27  regardless of the definition of retirement. That section provides for the payment of a Service

28

BRICTSON & COHN
ATTORNEYS AT LAW
SAN DIEGO

1   Pension after 30 years of eligible service, "as though he or she [the participant] had retired."

2   Therefore, Petitioners should be awarded the Service Pensions requested.

3                                           RESPECTFULLY SUBMITTED,

4

5
    Dated: August 20, 2007
6                                           _____
                                            Timothy Brictson
7                                           LAW OFFICE OF BRICTSON & COHN
                                            Attorneys for Petitioners
8                                           YIP and QUINTERO

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRICTSON & COHN
ATTORNEYS AT LAW
SAN DIEGO

POST ARBITRATION BRIEF OF YIP & QUINTERO, PETITIONERS

## AMERICAN ARBITRATION ASSOCIATION
### Arbitration Tribunal

In the Matter of the Arbitration between

Re: 73 620 00137 07 LYMC
    Claimant, SYLVIA QUINTERO
    VS
    Respondent, Board of Trustees of the UNITE-HERE Pension Fund

## AWARD OF ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the Pension Fund Rules providing for arbitration of disputes between the above-named parties and dated October 13, 2003, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, do hereby, AWARD, as follows:

### ISSUES

1. whether the Trustees were in error upon an issue of law.
2. whether they acted arbitrarily or capriciously in the exercise of their discretion.
3. whether their findings were supported by substantial evidence.

### BACKGROUND

The parties to this dispute and arbitration matter are SYLVIA QUINTERO, Appellant (Claimant) and the Board of Trustees of the UNITE-HERE Pension Fund (Respondent). An administrative hearing was held before the Board of Trustees regarding the Claimant's application for a Service Pension. While treated as an appeal of the denial of the Fund's administrators, the matter was not processed and heard as a *de novo* consideration. As provided in the Fund Plan, Claimant exercised his right to appeal the decision of the Trustees. The representatives of the parties appeared before the undersigned on August 8, 2007. Both parties were represented by Counsel.

### EXHIBITS

The parties presented documents relative their contentions, including the denial decision of the Fund administrators, the agenda note of the Trustees' denial of the pension, the transcript of the Trustees' hearing, new and old pension application forms, the Plan Rules, and other relevant documents. Pre- and Post-Hearing Briefs were filed by Counsel for both parties.

### DECISION

1. The Trustees were in error upon an issue of law (considering the Rules as the 'law' in this case) in that they failed to consider the question of severance of employment as presented by the Claimant, instituted a 'new' written requirement of proof of severance of employment by pension applicants, and failed to consider the apparent ambiguities in their Rules on this issue.

1

**EXHIBIT D**
17

2. The Trustees acted arbitrarily and capriciously as indicated above and in refusing to consider the evidence, finally adduced more specifically at the arbitration hearing, that numerous employees who had been granted Service Pensions retiree's had continued to work in the past without severing their employment. Instead, the Plan initiated a new requirement that pension applicants had to show proof of employment severance before their pension application would be considered on a substantive basis.
3. The Trustee's findings of fact were not supported by substantial evidence in that they failed to investigate the proffered evidence that other employees had not been required to sever employment prior to having their pensions granted.
4. ORDER: The Claimant's request for his Service Pension Benefit is hereby granted without a severance of employment.

## FURTHER RATIONALE

1. Pension Plan Rules have a *latent ambiguity* in that they provide apparently for continued employment after receipt of Service Pension, but also provides for 'recommending' of employment.
2. Arbitrator accepts showing that at least 22 employees in the two Hotels employing Appellant YIP (and YIP who is an Appellant in a 'companion' case, AAA Case No. 73 620 00140 07 LYMC, being heard simultaneously with the instant case).
3. Denial of pensions unless employment is severed denies retirees seniority and other benefits which they would continue to earn if they did not have to sever employment and for which other employees have benefited.
4. The Arbitrator adopts in whole or in part the rationale and argument of Claimant's Counsel as his findings of fact and conclusions of law.
5. The Arbitrator agrees with the sentiment expressed in the *Restatement (Second) of Contracts* which states in relevant part: "…it is sometimes said that extrinsic evidence (Arbitrator's Note: the 22 employees who have received pension benefits without severing employment) cannot change the plain meaning of the writing, but meaning can almost never be plain except in a context…" (found in *How Arbitration Works (Elkouris), BNA, Sixth Edition* page 437 ff., including footnotes))


The administrative fees and expenses of the American Arbitration Association totaling $500.00 shall be borne as incurred.

The fees and expenses of the arbitrator totaling $1500.00 shall be borne as incurred.

The other common expenses relating to this proceeding, totaling $16.55, shall be borne as incurred.

This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby, denied.

This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.


_8-29-07_
**Date**

_Philip Tamoush_ (signature)
**Philip Tamoush**

## EXHIBIT D

18

# AMERICAN ARBITRATION ASSOCIATION
## Arbitration Tribunal

In the Matter of the Arbitration between

Re: 73 620 00140 07 LYMC
      Claimant, CHARLES YIP
      VS
      Respondent, Board of Trustees of the San Diego UNITE-HERE Pension Fund

## AWARD OF ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the Pension Fund Rules providing for arbitration of disputes between the above-named parties and dated October 13, 2003, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, do hereby, AWARD, as follows:

### ISSUES

1. whether the Trustees were in error upon an issue of law.
2. whether they acted arbitrarily or capriciously in the exercise of their discretion.
3. whether their findings were supported by substantial evidence.

### BACKGROUND

The parties to this dispute and arbitration matter are CHARLES YIP, Appellant (Claimant) and the Board of Trustees of the San Diego UNITE-HERE Pension Fund (Respondent). An administrative hearing was held before the Board of Trustees regarding the Claimant's application for a Service Pension. While treated as an appeal of the denial of the Fund's administrators, the matter was not processed and heard as a *de novo* consideration. As provided in the Fund Plan, Claimant exercised his right to appeal the decision of the Trustees. The representatives of the parties appeared before the undersigned on August 8, 2007. Both parties were represented by Counsel.

### EXHIBITS

The parties presented documents relative their contentions, including the denial decision of the Fund administrators, the agenda note of the Trustees' denial of the pension, the transcript of the Trustees' hearing, new and old pension application forms, the Plan Rules, and other relevant documents. Pre- and Post-Hearing Briefs were filed by Counsel for both parties.

### DECISION

1. The Trustees were in error upon an issue of law (considering the Rules as the 'law' in this case) in that they failed to consider the question of severance of employment as presented by the Claimant, instituted a 'new' written requirement of proof of severance of employment by pension applicants, and failed to consider the apparent ambiguities in their Rules on this issue.

1

**EXHIBIT D**

18

2.  The Trustees acted arbitrarily and capriciously as indicated above and in refusing to consider the evidence, finally adduced more specifically at the arbitration hearing, that numerous employees who had been granted Service Pensions retiree's had continued to work in the past without severing their employment. Instead, the Plan initiated a new requirement that pension applicants had to show proof of employment severance before their pension application would be considered on a substantive basis.

3.  The Trustee's findings of fact were not supported by substantial evidence in that they failed to investigate the proffered evidence that other employees had not been required to sever employment prior to having their pensions granted.

4.  ORDER: The Claimant's request for his Service Pension Benefit is hereby granted without a severance of employment.

## FURTHER RATIONALE

1.  Pension Plan Rules have a *latent ambiguity* in that they provide apparently for continued employment after receipt of Service Pension, but also provides for 'recommencing' of employment.

2.  Arbitrator accepts showing that at least 22 employees in the two Hotels employing Appellant YIP (and QUINTERO who is an Appellant in a 'companion' case, AAA Case No. 73 620 00137 07 LYMC, being heard simultaneously with the instant case).

3.  Denial of pensions unless employment is severed denies retirees seniority and other benefits which they would continue to earn if they did not have to sever employment and for which other employees have benefited.

4.  The Arbitrator adopts in while or in part the rationale and argument of Claimant's Counsel as his findings of fact and conclusions of law.

5.  The Arbitrator agrees with the sentiment expressed in the *Restatement (Second) of Contracts* which states in relevant part: "...it is sometimes said that extrinsic evidence (Arbitrator's Note: the 22 employees who have received pension benefits without severing employment) cannot change the plain meaning of the writing, but meaning can almost never be plain except in a context..." (found in *How Arbitration Works (Elkouris), BNA, Sixth Edition* page 437 ff., including footnotes))

The administrative fees and expenses of the American Arbitration Association totaling $500.00 shall be borne as incurred.

The fees and expenses of the arbitrator totaling $1500.00 shall be borne as incurred.

The other common expenses relating to this proceeding, totaling $16.55, shall be borne as incurred.

This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby, denied.

This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

8-27-07
**Date**

*Philip Tamoush*
Philip Tamoush

2

**EXHIBIT D**

19