1  MELISSA W. COOK, ESQ.; SBN: 134791
   KERRY K. FENNELLY, ESQ.; SBN: 232621
2  MELISSA W. COOK & ASSOCIATES
   3444 Camino del Rio North, Suite 106
3  San Diego, California 92108
   Telephone: (619) 280-4302
4  Facsimile: (619) 280-4304

5  Attorneys for SAN DIEGO UNITE-HERE
   PENSION FUND
6

7

8                UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10 SAN DIEGO UNITE-HERE PENSION      )  Case No. 07 CV 2262 JLS (JMA)
   FUND,                            )
11                                   )  REPLY TO OPPOSITION TO
                                     )  PETITION FOR ORDER
12          Petitioner,             )  VACATING ARBITRATION
                                     )  AWARD
13 vs.                               )
                                     )
14 CHARLES YIP, an individual,       )
                                     )
15          Respondent.             )
   _____  )

16         Petitioner SAN DIEGO UNITE-HERE PENSION FUND (hereinafter

17 "Petitioner" or "Pension Fund") hereby submits its Reply to the Opposition of

18 Respondent CHARLES YIP (hereinafter "Respondent" or "YIP") to the Pension Fund's

19 Petition for Order Vacating Arbitration Award (hereinafter "Petition").

20                                  I.

21         MEMORANDUM OF POINTS AND AUTHORITIES

22         The Petition of the Pension Fund places before this Court the issues of 1)

23 whether the Arbitrator manifestly disregarded the governing law of section 401(a) of the

24 Internal Revenue Code of 1954 by ordering the Pension Fund to pay Respondent service

25 pension benefits despite the fact Respondent has not severed his active employment; and

26 2) whether the Arbitrator exceeded his powers as outlined in the Submission For

27 Arbitration by substituting his own judgment on the matter and his own interpretation

28 of the plan document for that of the Pension Fund Trustees.

KKF/mdn/0895.31.wpd
Reply to Opposition to Petition                    Case No. 07 CV 2262 JLS (JMA

1    As Respondent did during the Arbitration of this matter, Respondent's
2  Opposition to the Pension Fund's Petition, improperly misplaces the focus off the true
3  issues before this Court and places the focus on extraneous issues and unsupported
4  allegations. Respondent's Opposition discusses the reasons why Respondent feels the
5  Pension Fund should pay Respondent a service pension despite the fact he has not
6  severed his active employment, which the Trustees interpreted the Pension Plan to
7  require.  Respondent's Opposition relies heavily on allegations regarding 22 other
8  employees who receive a service pension but were not required to sever their active
9  employment.  Respondent's Opposition also argues how he, and subsequently the
10  Arbitrator, interpreted the language of the Pension Plan but does not discuss Trustees'
11  interpretation. To misplace the focus on these arguments is as improper here as it was
12  during the Arbitration.

13    Whether or not Respondent's arguments are stronger than the rationale on
14  which the Trustees relied to deny Respondent's application for service pension benefits
15  is not what is at issue here, nor importantly, was it at issue in the Arbitration.
16  Respondent's Opposition states that the issue before the Arbitrator was "[whether
17  Respondent is] entitled to a service pension pursuant to the terms of the Plan." (See page
18  8 of Respondent's Opposition filed herein).  This was absolutely not the issue before the
19  Arbitrator and is exactly the problem with the Arbitration Award and why it should be
20  vacated.

21    As outlined in the Petition of the Pension Fund, the issues before the
22  Arbitrator, as clearly stated in the Submission of Arbitration, were: (1) whether the
23  *Trustees* were in error upon an issue of law; (2) whether *they* acted arbitrary or
24  capriciously in the exercise of *their discretion*; and (3) whether *their* findings of fact
25  were supported by substantial evidence. (emphasis added).  The focus is on the Trustees
26  not the Respondent.  As discussed in the Petition of the Pension Fund, it is evident
27  throughout the Arbitration Award that the Arbitrator chose to disregard these issues and
28  the scope of his review by substituting his interpretation of the Pension Plan for that of

-2-

Reply to Opposition to Petition                                    Case No. 07 CV 2262 JLS (JMA

the Trustees. Thus, along with the Arbitrator's complete disregard for the governing law, this improper focus provides clear grounds to support an order vacating the Arbitration Award.

**A.    The Arbitration Award Should Be Vacated Because The Arbitrator Exceeded The Scope of His Authority By Substituting His Own Judgment For That Of The Trustees**

**1.    The Arbitrator Improperly Evaluated The Allegations Of Respondent Rather Than The Rationale Of The Trustees**

The main contention of Respondent both during the Arbitration and in his Opposition here, is the allegation that 22 other employees have previously received a service pension without having to sever their active employment therefore he should not have to either. As Respondent points out in his Opposition these allegations were what the Arbitrator relied on in issuing his Award. (See page 10 lines 2-9 of Respondent's Opposition filed herein.) Reliance on these allegations by the Arbitrator to support the award of service pension benefits is precisely why the Arbitration Award should be vacated. It was beyond the bounds of the Arbitrator's review of the matter to make any findings with respect to these allegations and further it was beyond the Arbitrator's powers to conclude that this alleged evidence was any more convincing than the substantial evidence the Trustees chose instead to rely on to deny Respondent's application for service pension benefits.

There is no legal requirement that an employee who is ineligible for a benefit under the terms of the Pension Plan can nonetheless receive that benefit because the Pension Fund may have granted it previously to other ineligible employees. Neither the Respondent or the Arbitrator has cited to any case law to support there contention that if the Pension Fund made a mistake in the past with respect to similarly situated participants it should continue to repeat that mistake by granting benefits to them or to support granting benefits to employees that may have misrepresented facts to the Pension Fund. In fact, federal case law has specifically rejected this theory.

-3-

1        In *Oster v. Barco of California Employees' Retirement Plan*, 869 F.2d 1215,

2  1219 (9th Cir. 1988), the Ninth Circuit affirmed a plan administrators' refusal to grant

3  benefits in the form of a lump-sum distribution. The plan documents allowed only an

4  annuity benefit, not a lump sum, but the administrators had in the past followed an

5  informal policy of routinely granting accelerated lump-sum payments. Before the

6  plaintiff requested benefits, however, the administrators had "phased out" that policy

7  based on the advice of an actuary. The Ninth Circuit concluded that "if this decision was

8  a reasonable one, we will not substitute our judgment for that of the Plan's trustees." *Id.*

9  Despite the fact that all prior applicants had been granted a lump-sum distribution, the

10  court refused to find the modification of the policy arbitrary and capricious. The court

11  did not inquire into whether the other employees were similarly situated to plaintiff;

12  instead the fact that the change in policy was rational was enough to insulate the

13  administrators from judicial second-guessing.

14        Similarly, the Arbitrator should not have second-guessed the Trustees'

15  judgment on Respondent's allegations and should not have improperly substituted his

16  own judgment for that of the Trustees. Rather than focusing on the allegations of

17  Respondent that service pension benefits had been granted in the past to ineligible

18  employees, the Arbitrator should have examined the decision of the Trustees as it

19  pertains to this Respondent and whether that decision was an error of law, unreasonable

20  or not supported by substantial evidence. Nowhere in the Arbitration Award does the

21  Arbitrator even discuss the law, the substantial evidence or the clear rationale on which

22  the Trustees relied.

23        The Third Circuit in 2005 followed the above rationale of the Ninth Circuit

24  in *Oster,* as well as the rationale of other circuit courts that had dealt with similar claims,

25  when it reversed a lower court's ruling that a plan administrator had acted arbitrary and

26  capriciously in denying a employee's early retirement benefits. *Vitale v. Latrobe Area*

27  *Hospital*, 420 F.3d 278, 285-286 (3d. Cir. 2005). In *Vitale*, the Third Circuit found it

28  was legally insufficient for the lower court to rely on the employee's argument that

1  similarly situated employees had been granted benefits when the plain language of the

2  Plan compelled the plan administrator to deny the benefits. In its analysis the Third

3  Circuit poignantly noted that:

> Where an ERISA plan mandates a denial of benefits, the mere
> fact that administrators have in the past granted benefits is no
> reason to impose a straightjacket requiring them to do so
> forever. Both the clear requirements of ERISA and obvious
> reasons of policy suggest that administrators should be
> allowed to correct their mistakes and deny benefits to those
> participants who are not eligible for them under the
> unambiguous terms of the plan.

*Id.* at 286.

Here, the same policy applies. The Pension Fund should not be improperly

bound to violating the clear language of the Plan and the Internal Revenue Code simply

because of alleged mistakes in the past. Further, any evidence that the Pension Plan had

instituted an alleged "new requirement," including requiring employees to submit a

Severance Verification Form completed by their employer prior to receiving service

pension benefits does not support a finding by the Arbitrator that the Pension Fund was

acting arbitrary or capriciously. In fact it supports the exact opposite, that the Trustees

are attempting to ensure the Pension Fund is administered properly and in conformity

with its terms as interpreted by them and in accordance with the requirements of the

Internal Revenue Code.

The decision of the Trustees to follow a prudent and reasonable rationale

with respect to the application of Respondent and that the requirement of severance of

employment be met prior to payment of service pension benefits should not have been

improperly substituted by the Arbitrator simply because he disagreed with the rationale

and would have decided it differently based on unsupported and irrelevant allegations

by Respondent. As Respondent's Opposition states, the letters by Respondent regarding

the allegations of the other 22 employees were part of the Administer Record. Further,

Respondent was present at the Appeal Hearing of the denial of his service pension

application, in which he presented these allegations to the Trustees. Thus, there is no

doubt the allegations regarding the other alleged 22 employees was presented to the

-5-

Trustees for their consideration; however, as stated above, the Trustees decided that despite these allegations it was proper to deny Respondent's application because he had not severed his employment which they knew was required by the Internal Revenue Code and by the Pension Plan pursuant to their interpretation of its terms.

2. **The Arbitrator Improperly Substituted His Own Interpretation Of the Plan For That Of The Trustees**

The full Administrative Record of the Pension Fund on Respondent's Appeal of the denial of his service pension application was provided to the Arbitrator, which included the transcript of the Appeal hearing, the Pension Fund Plan, Respondent's application, miscellaneous letters exchanged between the Pension Fund and Respondent and the Findings and Decision of the Trustees of the Pension Fund on Respondent's Appeal. None of these items were discussed or cited in the Arbitration Award. Moreover, the Arbitrator failed to discuss or cite to the Findings and Decision of the Trustees of the Pension Fund, which is attached hereto as Exhibit "A".

The Findings and Decision of the Trustees clearly discusses that the Trustees' interpretation of the Pension Fund Plan is that it requires an employee to "retire" in order to receive a service pension benefit. Further, their interpretation of the word "retire" is a severance of active employment. Rather than discussing how or why this is an unreasonable interpretation of the word "retire," the Arbitrator simply concluded that the Trustees were wrong in their interpretation of the Plan. (See paragraph one under subheading "Decision" of the Arbitration Award, attached as Exhibit "D" to the Petition, in which the Arbitrator misdefines the word "law" as the Pension Plan "Rules" and then concludes that the Trustees misinterpreted it.)

Not only does the Arbitrator fail to stay within the bounds of his authority by failing to review the reasonableness of the Findings and Decision of the Trustees', but the Arbitrator improperly takes it a step further by deciding the matter by "adopt[ing] . . . the rationale and argument of Claimant's Counsel as <u>his findings and conclusions of law.</u>" (See paragraph four, page 2 of the Arbitration Award attached as Exhibit "D" to

-6-

1   the Petition of the Pension Fund filed herein.) (emphasis added.) Again, this was not the

2   task before the Arbitrator. He was not to decide whose rationale and arguments were

3   better nor was it for him to reach any "findings or conclusions of law." The task was for

4   him to decide if the <u>Trustees'</u> findings and conclusions of law were in error, arbitrary and

5   capricious or unsubstantiated by substantial evidence.

6           Respondent's interpretation of the Pension Plan's use of the word "retire"

7   does not matter. What matters is whether the Trustees' interpretation is reasonable. The

8   Trustees' decision "need not be the best possible decision, only one with a rationale

9   justification." *Griffis v. Delta Family-Care Disability*, 723 F.2d 822, 825 (11th Cir.

10  1984), cert. denied, 467 U.S. 1242 (1984). Here, contrary to Respondent's tortured

11  reasoning which admits that the service pension provisions require one to retire, it is

12  completely rational for the Trustees to define the word "retire" to require a severance of

13  active employment. As defined in the *Webster's Ninth New Collegiate Dictionary*, page

14  1007 (1987), "retire" is "to withdraw from one's position or occupation."

15  **B.    The Arbitration Award Should Be Vacated Because The Arbitrator**

16          **Manifestly Disregard Not Only The Governing Law But The Trustees'**

17          **Reliance On That Law**

18          Similar to the Arbitration Award in this matter, Respondent's Opposition

19  completely disregards the very important relevance of Internal Revenue Code Section

20  401(a) to this matter. Respondent's Opposition argues that the Pension Fund provided

21  no evidence that it is a qualified plan under Section 401(a) and further argues that the

22  Pension Fund's status as a qualified plan is not an issue in this matter. Nothing could

23  be farther from the truth.

24          The fact that the Pension Fund is a qualified plan under Section 401(a) is

25  a fact of paramount importance to the Trustees, employees and participants. Along with

26  this knowledge as to the status of their plan they are also aware that a qualified plan may

27  not distribute benefits to participants before they reach normal retirement age while the

28  participant is still actively employed or else they would violate the Internal Revenue

-7-

1  Code. These facts were the foundation upon which the Trustees made their decision to

2  deny Respondent's application for service pension benefits.

3          Furthermore, at the arbitration the Pension Fund made it abundantly clear

4  to the Arbitrator that these were the facts and law upon which the Trustees relied on in

5  making their decision, yet nowhere in the Arbitrator's Award does he discuss these facts

6  or the Trustees' rationale based on these facts. The Arbitrator completely disregarded

7  Section 401(a)'s applicability to this matter. His award requiring the Pension Fund to

8  distribute service pension benefits to Respondent despite the fact he has not severed his

9  employment jeopardizes the tax qualified status of Pension Fund under Section 401(a).

10          Aside from discussing the status of the Pension Fund's status as a qualified

11 plan under Section 401(a) and directing the Arbitrator's attention to the applicable

12 Revenue Rulings in its Arbitration Briefs, the Pension Fund also submitted to the

13 Arbitrator a copy of the San Diego UNITE-HERE Pension Fund Trust Agreement

14 (hereinafter "Trust Agreement"), which specifically provides that:

15          The Trustees shall administer the [Pension] Fund and the
            benefit plans so that, to the extent allowed in the Internal
16          Revenue Code . . . *the Trust Fund remains tax exempt.* Section
            2 of Article VII of the Trust Agreement (emphasis added).
17
(See page 17 of the Trust Agreement, a true and correct copy of which is attached hereto
18
as Exhibit "B"). The Trust Agreement further provides that the Pension Fund "shall be
19
administered, in accordance with . . . the Internal Revenue Code . . ." Section 2 of Article
20
XIII of the Trust Agreement. (See page 42 of the Trust Agreement, a true and correct
21
copy of which is attached hereto as Exhibit "B"). There is simply no doubt that the
22
primary purpose of the Pension Plan is to operate as a tax exempt entity and it is
23
paramount that the Trustees protect that status. For the Arbitrator to manifestly disregard
24
these legal principles and order the Trustees to violate both the Internal Revenue Code
25
and its own rules provides solid ground on which this Award must be vacated.[1]
26

27          [1] The Pension Fund is willing to submit a copy of its most current Letter of Determination of Tax
    Qualified Status to the Court if the Court has any concerns about the tax qualified status of the Pension
28  Fund.

-8-

1    There is simply no better example of an arbitrator manifestly disregarding

2  the governing law despite their awareness of the law than the Arbitration Award issued

3  in this matter.  This is the exact type of Arbitration Award for which relief is recognized

4  in all federal courts, including the United Statues Supreme Court and this circuit under

5  the grounds of "manifest disregard of the law."  (See *First Options of Chicago, Inc. v.*

6  *Kaplan*, (1995) 514 U.S. 938, 942; see also *Wilko v. Swan*, (1953) 346 U.S. 427, 436-437

7  (overruled on other grounds, *Rodriguez De Quijas v. Shearson/American Expage, Inc.*,

8  (1989) 490 U.S. 477); *Northrop Corp. v. Triad International Marketing S.A.*, 811 F.2d

9  1265, 1269 (9th Cir. 1987).

10 **C.    It Is Not Only The Pension Fund's Legal Right To Seek To Vacate The**

11 **Arbitration Award But The Fiduciary Duty Of the Trustees To Do So**

12    Respondent's Opposition incorrectly contends the Pension Fund does not

13 have a legal right to petition this Court to vacate the Arbitration Award simply because

14 the Pension Plan only discusses a participant's right to bring suit after arbitration.  It is

15 the Pension Fund's obligation to inform participants of their rights and remedies under

16 the Employee Retirement Income Security Act of 1974 as amended 29 U.S.C. §1001, et

17 seq. The absence of discussion in the Pension Plan regarding the Pension Fund's right

18 to sue does not equate to the Pension Fund waiving their right.   Furthermore, as

19 explained above, because the Arbitration Award directs the Trustees to violate Section

20 401(a) of the Internal Revenue Code and jeopardize the Pension Fund's status as a

21 qualified plan, the Trustees have a fiduciary duty to bring this action.  It would be a

22 breach of the Trustees fiduciary duty, and the Trust Agreement as cited above, for the

23 Trustees to not do everything in their power to set aside this illegitimate and erroneous

24 Arbitration Award that directs the Trustees to disregard the governing law and risk the

25 Pension Fund's assets.

26                                    **II.**

27                              **CONCLUSION**

28    As set forth above and in the Pension Fund's Petition, the Arbitration Award

-9-

1  in this matter should be vacated by this Court on the grounds: 1) it "manifestly disregards

2  the law"; and 2) the Arbitrator exceeded the scope of his authority by substituting his

3  own judgment for that of the Trustees and directing the Pension Fund to violate Section

4  401(a) of the Internal Revenue Code and the Trust Agreement.

5  DATED:    2/19/08              BOARD OF TRUSTEES OF THE
                                  SAN DIEGO UNITE-HERE PENSION FUND
6

7                                By: _____
8                                Melissa W. Cook, Esq.
                                 Kerry Kessler Fennelly, Esq.
9                                MELISSA W. COOK & ASSOCIATES
                                 3444 Camino del Rio North, Suite 106
10                               San Diego, California 92108
                                 Attorney for Petitioner
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Reply to Opposition to Petition                    Case No. 07 CV 2262 JLS (JMA

**INDEX TO EXHIBITS**

EXHIBIT A    Findings and Decision of the Trustees of the
Pension Fund .......................................... 6, 12

EXHIBIT B    Pages 17 and 42 of the Trust Agreement ............... 8, 14

Reply to Opposition to Petition                    Case No. 07 CV 2262 JLS (JMA

FINDINGS AND DECISION OF THE
BOARD OF TRUSTEES OF THE
SAN DIEGO UNITE-HERE PENSION FUND
APPEAL OF CHARLES YIP

The Board of Trustees of the San Diego UNITE-HERE Pension Fund held an appeal hearing at the request of Mr. Charles Yip, SSN: XXX-XX-7186, on October 25, 2006. Mr. Yip was resent at the appeal hearing and was not represented by an attorney.

Mr. Yip applied for a Service Pension Benefit on July 1, 2006. Mr. Yip has continuously worked at Hyatt Regency Islandia from July 15, 1976 through the present. Mr. Yip was subsequently informed by the Administrative Office that his application for a Service Pension Benefit was denied because he had not severed employment with his employer.

At the hearing, Mr. Yip testified that all of the papers relevant to the appeal were currently included in the administrative record and that there were no other documents that the Board of Trustees should consider with the exception of certain documents he presented, which were attached as exhibits to the transcript.

## FINDINGS

Following the appeal hearing, the Board of Trustees made the following Findings:

1. Mr. Charles Yip worked under the jurisdiction of the San Diego UNITE-HERE Local 30 Collective Bargaining Agreement at the Hyatt Regency Islandia from July 15, 1976 through the present. Mr. Yip's date of birth is September 8, 1954. He is presently 52 years old.

2. Mr. Yip applied for a Service Pension under the San Diego UNITE-HERE Pension Plan which provides in Section 3.10 as follows:

"An employee shall be eligible to retire after January 1, 1988, on a Service Pension for the first of any month following the date he or she has accrued a total of at least

MWC/ldt/0895APP03.Yip.Findings.wpd
12/06/06

**EXHIBIT A**

**12**

thirty (30) Past and Future Service Credits, at least one of which must be Future Service."

3. Mr. Yip has not provided the Pension Fund with an Employer's Certification of his severance of employment from Hyatt Regency Islandia.

4. Mr. Yip is not eligible to retire and therefore not eligible for a Service Pension Benefit under the terms of the Pension Plan as he has not severed his employment with the Hyatt Regency Islandia and does not meet the definition of a "Retired Employee" under the Plan, which is defined in Section 1.27 of the Plan as "an Employee who has retired from Employment in the Industry within the meaning of Article III."

## DECISION

Upon motion duly made, seconded and unanimously carried, the Board of Trustees hereby affirms its prior decision to deny Mr. Yip's appeal for a Service Pension Benefit as a result of his failure to sever employment with a contributing Employer to the Pension Fund as required under Sections 3.10 and 1.27 of the Pension Plan.

-2-

**EXHIBIT A**

**13**

TRUST AGREEMENT

GOVERNING THE

SAN DIEGO HOTEL AND RESTAURANT EMPLOYEES PENSION FUND

(AS REVISED AND RESTATED

EFFECTIVE JULY 1, 1994)

MTK/jmt/089502T.94
7/25/94

EXHIBIT B

14

RESTATEMENT OF THE
TRUST AGREEMENT GOVERNING THE

SAN DIEGO HOTEL AND RESTAURANT EMPLOYEES PENSION FUND

EFFECTIVE JULY 1, 1994

This RESTATEMENT OF TRUST AGREEMENT GOVERNING SAN DIEGO HOTEL AND RESTAURANT EMPLOYEES PENSION FUND EFFECTIVE JULY 1, 1994 adopted on _____, 1994, by the Board of Trustees of the San Diego Hotel and Restaurant Pension Fund at a duly held meeting is made with reference to the following facts:

A.    Article IX, Section 1, of the RESTATED AGREEMENT AND DECLARATION OF TRUST, as amended, effective January, 1977 provides that the Trustees have the power to amend this Trust Agreement.

B.    The Trustees desire to adopt this Restatement to coincide with their administration of the SAN DIEGO HOTEL AND RESTAURANT EMPLOYEES PENSION PLAN EFFECTIVE MARCH 1, 1994.

C.    It is the intent of the Trustees that this Restatement shall not increase, alter, or terminate any of the rights or obligations of the parties hereto or of any Employer, Employee, Retiree, Spouse, or Beneficiary unless expressly required by the provisions hereof.

D.    It is the intent of the Trustees that this Restatement, and all subsequent amendments hereto, shall conform in all respects to the National Labor Relations Act of 1947, as amended; the Labor-Management Relations Act; the Employee Retirement Income Security Act of 1974, as amended, and any regulations thereunder; the Retirement Equity Act of 1984, as amended, the Tax Reform Act of 1986, as amended, and any regulations thereunder; and all other applicable laws of the United States of America and the State of California.

IT IS THEREFORE MUTUALLY AGREED AS FOLLOWS:

-1-

EXHIBIT B

15

ARTICLE VII.

TRUSTEE RESPONSIBILITIES

Section 1.        General Duty - Receipt of Contributions and
                  Creation and Administration of Benefit Plans

         It shall be the general duty of the Trustees to receive
the contributions from participating employers and any other income
or assets that they may receive and, with such, to create and
administer one or more employee pension benefit plans for the
participating employees, and their beneficiaries.

         Additionally, the Trustees shall have the specific duties
set forth in this Trust Agreement and such other duties as are
imposed upon them by Section 302(c) of the Labor Management
Relations Act of 1947, the Employee Retirement Income Security Act
of 1974, as amended, and other applicable laws.

Section 2.        Compliance with the Internal Revenue Code

         The Trustees shall administer the Trust Fund and  the
benefit plans so that, to the extent allowed in the Internal
Revenue Code, employer contributions are deductible from the
taxable income of the employer, employer contributions are not
includible in the taxable income of a participating employee or
beneficiary (until benefits are actually received), and the Trust
Fund remains tax exempt.

Section 3.        Funding Standards

         The Trustees, with the assistance of their enrolled
actuary, shall establish and maintain one or more funding standard
accounts, as required by Section 302(b)(1) of the Employee
Retirement Income Security Act of 1974, for the purpose of
determining that the benefit plans remain actuarially sound
according to the funding standards imposed by such Act.   The
funding standard account shall be reviewed by the Trustees at least
once each year and on occasions when the Trustees are considering
amendments to the benefit plans which involve a change in actuarial
cost.

         The Trustees shall administer the Trust Fund and the
benefit plans so that, to the extent such is reasonably within
their control, the benefit plans do not accrue an uncorrected
"accumulated funding deficiency", as defined in Section 302(a)(2)
of such Act.   If it should be determined that an "accumulated
funding deficiency" has accrued or will accrue, the Trustees shall
take remedial action to correct such deficiency, which action may
include the amendment of the benefit plans to adjust the level of
benefits.

-17-

**EXHIBIT B**

16

ARTICLE XIII.

MISCELLANEOUS

Section 1.        Trust Fund Offices

        The Trust Fund shall maintain a principal office in such location as the Trustees may determine.

Section 2.        Applicable Laws and Regulations

        This Trust Agreement shall be interpreted, and the Trust Fund shall be administered, in accordance with Section 302(c) of the Labor Management Relations Act of 1947, the Internal Revenue Code, and the regulations pertinent thereto, and other applicable statutes and regulations, as such statutes and regulations presently exist or as they may hereafter be amended.

        References herein to particular sections of the above-mentioned statutes shall include any regulations pertinent to such sections and any subsequent amendments to such sections or regulations.

Section 3.        Service in More than one Fiduciary Capacity

        Any Trustee or other person who is a fiduciary may serve the Trust Fund in more than one fiduciary capacity.

Section 4.        Notices

        Any written notice permitted by this Trust Agreement shall be personally delivered to the person for whom it is intended, or sent to such person at his residence or business address by first class mail or prepaid telegram.

Section 5.        Severability

        If any provision of this Trust Agreement, or of the benefit plans, is held to be illegal or invalid for any reason, such illegality or invalidity shall not affect the remaining portions of the Trust Agreement, or the benefit plans.

Section 6.        Titles and Words

        The titles of the various articles and sections of this Trust Agreement are inserted solely for convenience of reference and are not a part of, nor shall they be used to construe, any term or provision hereof. Whenever any words are used herein in the masculine gender they shall be construed as though they were used in the feminine gender, and words in singular form shall be construed as though they were used in the plural form, in all cases where they would so apply.

-42-

EXHIBIT B

17

## SIGNATURES OF PARTIES

The foregoing revised and restated Trust Agreement is adopted this 27th day of ___July___, 1994.

EMPLOYER TRUSTEES               LABOR ORGANIZATION TRUSTEES

-44-

**EXHIBIT B**

**18**

## PROOF OF SERVICE

I, the undersigned, declare that I am employed in the County of San Diego, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 3444 Camino del Rio North, Suite 106, San Diego, California 92108; I am employed in the office of a member of the bar of this Court at whose direction I served a copy, including all exhibits, if any, on **February 19, 2008**, of the following document(s):

REPLY TO OPPOSITION TO PETITION FOR ORDER VACATING
ARBITRATION AWARD

by placing a true copy thereof in an envelope addressed to the person(s) named below at the addresses(es) shown:

Timothy L. Brictson, Esq.
Law Office of Brictson and Cohn
2214 Fifth Avenue
San Diego, CA 92101
Attorney for Sylvia Quintero

☒ **By United States mail:** I placed a true copy in a sealed envelope or package addressed to the person(s) at the address(es) indicated above on the above-mentioned date and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐ **By Facsimile:** From facsimile machine telephone number (619) 280-4304, on the above-mentioned date, I served a full and complete copy of the above-referenced document(s) by facsimile transmission to the person(s) at the number(s) indicated.

☐ **By Personal Service:** I placed a true copy in a sealed envelope addressed to each person(s) named at the address(es) shown and gave same to a messenger for personal delivery before 5:00 p.m. on the above-mentioned date.

☐ **By Next Day Mail:** I placed a true copy in a sealed envelope addressed as indicated above on the above-mentioned date. I am readily familiar with this firm's practice of collection and processing of correspondence for delivery by next day mail. Pursuant to that practice, envelopes placed for collection at designated locations during designated hours with a fully completed airbill under which all delivery charges are paid by this firm that same day in the ordinary course of business.

I caused the above-mentioned document(s) to be electronically filed.

I hereby certify under penalty of perjury that the foregoing is true and correct.

Executed on **February 19, 2008**, at San Diego, California.

*Marion D. Nelson*
Marion D. Nelson

Proof of Service